[Civ. No. 12502. Second Appellate District, Division Two.—February 26, 1940.]

In the Matter of the Estate of OLAF MICKELSON, Deceased. FRED M. MICKELSON et al., Appellants, v. NANCY ADELINE MICKELSON, Administratrix, etc., Respondent.

John F. McCarthy for Appellants.

Russell D. Garner and Robert Kingsley for Respondent.

WOOD, J.—Olaf Mickelson died on May 10, 1938, at the age of 76 years. His will, dated April 16, 1938, was admitted to probate and thereafter and within the time allowed by law contestants, sons of decedent, filed a petition for the revocation of the probate of the will. Upon the close of contestants' testimony presented at a jury trial the court granted a motion for a nonsuit and the appeal was taken from the ensuing judgment. The only point argued by contestants on this appeal concerns the ruling of the court in holding that it was not shown that decedent was of unsound mind at the time of the execution of the will. Although it appears from the record that an appeal was taken from the ruling of the trial court sustaining a demurrer to causes of action setting up other grounds of contest, contestants have apparently abandoned their contentions in this regard and we therefore will consider only the issue concerning the mental condition of the decedent.

Decedent was married to his first wife, Matilda, in 1879 and lived with her until her death in July, 1936. Four children were born to them but only two, the sons Walter and Fred, contestants herein, were living at the time of his death. Seven months after the death of his first wife decedent married Nancy Adeline Mickelson, whom he met for the first time shortly after the death of his first wife. In the first three paragraphs of the will, which was executed during his last illness, decedent recites that he was married to Nancy Adeline Mickelson and that his two sons are his only surviving lineal issue. In the next paragraph of the will testator recites merely that he is the owner of certain described real property, but does not there make a gift of any of it. In the next paragraph he provides: "I hereby give, devise and bequeath all the rest, residue and remainder of my estate of whatsoever kind or character, and wherever situated to my wife, Nancy Adeline Mickelson." Nowhere in the will does the testator state expressly to whom he gives the property described in the will.

From the evidence presented by contestants it appears that decedent was a mason and that during his first marriage he accumulated considerable property, residential property in Long Beach and an orange grove at Covina. He lived a healthy normal life and was mentally alert until February, 1935, when he suffered a "stroke". At that time he fell from a stool and was picked up unconscious. From then on his health failed and in the summer of 1935 he suffered another "stroke". From that time until his death he became progressively worse both mentally and physically. He appeared to realize he was failing mentally, for he declared that he was losing his mind and that something was going around and around in his head. His speech at times was unintelligible and his eyes had a blank stare. He became cruel and abused his first wife, who was a cripple, for some time before her death. His condition was such that at times he did not know what was going on around him.

Before he suffered the "strokes" decedent was on the best of terms with his two sons and for many months at a time lived in Walter's home. The other son, Fred, took complete charge of decedent's orange grove for three years without compensation. Shortly before his death decedent turned against his sons to such an extent that he left orders with the funeral director that they should not be allowed at his funeral. He had never questioned the faithfulness of his first wife during her lifetime but after her death he frequently questioned the paternity of his sons in conversations with Walter's wife and said that his first wife had had immoral relations with sixteen different men. To Walter he said: "Your mother was nothing but a street whore that I protected for 57 years." Contestants presented evidence that Matilda Mickelson had been a dutiful wife.

We must consider the evidence in the light of the rule that every favorable inference fairly deducible from the evidence and every favorable presumption fairly arising therefrom must be taken as facts proved in favor of contestants. The court must take the view most favorable to contestants if several different inferences may reasonably be drawn from the evidence. If there is substantial evidence tending to establish the facts which contestants must prove in order to make out their case they are entitled to have the issue submitted to the jury. (*Estate of Arnold,* 147 Cal. 583 [82 Pac. 252].)

■ In many decisions the reviewing courts of California have admitted wills to probate which were made by testators during their last illnesses even though the testators were admittedly of feeble minds or suffering from delusions or hallucinations. Mere proof of mental derangement or insanity has been held insufficient to invalidate a will. (*Estate of Russell*, 189 Cal. 759, 769 [210 Pac. 249].) In *Estate of Perkins*, 195 Cal. 699 [235 Pac. 45], the decedent made a will during her last illness at the age of 56 years. A few days before the time of the signing of the will she told the nurse who was in attendance that she was going to be married and asked her to see that no one used the telephone as she wished to call up her bridesmaids. On another occasion within a few days of the time of the signing of the will she told the nurse that the pictures had been taken down from the hooks on the wall in order that babies might be hung there. The jury found that the decedent was of unsound mind, but the Supreme Court in reversing the judgment refusing the probate of the will held that "no possible relationship between these delirious hallucinations and the testatrix' disposition of her property could be traced".

It is not for this court to approve or disapprove the decisions of the Supreme Court, but rather we must be guided by them. The contestants in proceedings of this kind, where the issue is the unsoundness of mind of the testator, are required to prove either such a complete mental degeneration as denotes an utter incapacity to know and understand those things which the law prescribes as essential to the making of a valid will, or the existence of a specific insane delusion which affected the making of the will. (*Estate of Russell, supra.*)
■ We are satisfied that contestants ·have not furnished proof of such a complete mental degeneration as would justify submitting the case to the jury, but they have furnished ample proof that decedent was suffering from an insane delusion in regard to the paternity of his sons and that this insane delusion affected the execution of his will.

In *Estate of Russell, supra,* the facts were very similar to the facts of the case now before us. In that case, like the one under review, a petition was presented for the revocation of the probate of a will. The jury returned a verdict in favor of the contestant and the judgment of revocation was affirmed on appeal. The testator left all of his property to his second

wife. and disinherited his adult daughter by a former marriage. He had married his second wife 27 years before his death. He lived with his first wife and children nearly 4 years, then suddenly abandoned them and did not communicate with them during the lifetime of the wife. After the death of his first wife he sought the contestant and for a long time treated her as his daughter. Witnesses for the proponents testified that he had told them that he came home one day and found a man in bed with his wife, and that was the reason he left. It does not appear, however, that he ever told this story to anyone until 40 years after the supposed occurrence. In that case, as in the present one, the testator late in life suffered from the delusion that his lineal descendant was illegitimate. In disposing of the contentions of the proponents the Supreme Court held that the belief on the part of the testator that the contestant was not his daughter was an insane delusion; that evidence of the statement of the testator concerning the conduct of his first wife was competent to prove that he believed in the truth of the statement at the time it was made but, nevertheless, it was "pure hearsay and wholly valueless for the purpose of proving that such an incident had in fact occurred"; that the conclusion that the statement was true "is rebutted by the presumption of chastity". The following excerpt taken from the decision is especially appropriate to the facts of the case under review: "But when it is shown that the testator entertained no such belief or suspicion for a period of more than forty years, such belief thereafter first appearing can be ascribed in reason only to some fact or circumstance or evidence which thereafter transpired. There being no such fact or circumstance or evidence disclosed, it remains only to ascribe the belief to the spontaneous generation of a diseased mind."

Contestants in the present proceeding have made a stronger showing than was made by the contestant in the Russell case. Decedent lived with his wife for 57 years without questioning her chastity, and the paternity of contestants, acknowledged for many years by decedent to be his sons and admitted by the pleadings to be his sons, was not questioned until after the "strokes" suffered by decedent late in life. There is not even the semblance of evidence to justify a belief on the part of decedent that contestants were illegitimate. If, as contended by contestants, decedent was suffering from the insane

delusion that he was not their father, unquestionably the delusion affected the making of his will. Such was the ruling in the Russell case. The issue should have been submitted to the jury.

The judgment of nonsuit is reversed. The "judgment on demurrer" dated January 31, 1939, is affirmed. Appellants shall recover costs on appeal from respondent Nancy Adeline Mickelson.

Moore, P. J., and McComb, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 8, 1940.