[Civ. No. 6792.   Fourth Dist.   Aug. 24, 1962.]

Estate of CHARLES MASROBIAN, Deceased.   MANO MASROBIAN, Contestant and Appellant, v. AZNIV ATMAJIAN et al., Defendants and Appellants.

134

James C. Janjigian for Contestant and Appellant.

Gasper H. Magarian and Chinello & Chinello for Defendants and Appellants.

GRIFFIN, P. J.—Charles Masrobian, the testator, died June 3, 1960, a resident of Fresno County. A petition for probate of will and issuance of letters testamentary was filed by the named executrix Azniv Atmajian on June 6, 1960. Among other things, her petition alleged that the estate consisted of a bank deposit of about $8,000 in Fresno and a savings and loan deposit of about $11,000 in Chicago, Illinois. The will was dated January 12, 1960. The executrix, her sister Arshalous Ametjian and her brother Gueragos Mana-

selian, proponent and respondents (hereinafter referred to as respondents) are the sole beneficiaries under the will. Written opposition to the will was filed by contestant-appellant Mano Masrobian, brother of the decedent (hereinafter referred to as contestant) on June 16, 1960. The grounds of contest were: (1) that the testator did not have testamentary capacity; (2) that the will was not duly executed; and (3) that the will was the product of undue influence by respondents Azniv Atmajian and Arshalous Ametjian. All these allegations were denied by respondents in a verified answer by the legatees and devisees and Azniv Atmajian as executrix.

After the contest of will was filed, Leo Kolligian was appointed special administrator of the estate. He was neither a contestant nor a proponent of the will. At the inception of the trial, the court defined Mr. Kolligian's position as follows:

"The Court: I think there are two or three things with regard to the proceedings here that we ought to have understood at the start. In the first place, with regard to Mr. Kolligian, who is the special administrator, Mr. Magarian represents him of record, as well as certain of the other parties. Of course, the special administrator stands neutral in a matter of this kind, and it is understood, Mr. Magarian, that you simply appear for him to show that he is alerted to the fact that there is a contest, and your participation on behalf of the other respondents is not to be construed as that Mr. Kolligian is taking any active part in this contest.

"Mr. Magarian: That's right."

Special administrator Kolligian is not a party appellant or respondent on this appeal. An undeveloped suggestion in contestant's opening brief is that he may have a final judgment of some sort against the special administrator. We will discuss this question later.

The trial court required the proponent (Azniv Atmajian) to first make the prima facie showing that the will was executed in all particulars as required by the Probate Code. See *Swift* v. *Superior Court,* 39 Cal.2d 358, 364 [247 P.2d 6]. Accordingly, the testimony of Gasper H. Magarian and Blossom B. Gregorian, the attesting witnesses, was first adduced in the presence of the jury. A stipulation was made that all such evidence could be "considered by the jury in connection with the contest, so that there will be no necessity for a double showing of repetition of certain facts." At the conclusion of contestant's case, respondents moved for a nonsuit as to all grounds of contest. The motion was granted as to the ground

of lack of due execution of the will and denied as to the other grounds. The effect of this ruling was fully and adequately explained to the jury, i.e., that the question of competency and undue influence still remained a question for the jury. After both sides rested, respondents moved for a directed verdict in their favor, which motion was denied. The jury returned a verdict that deceased, at the time he signed the will, was not of sound and disposing mind and was not free from undue influence. The trial court directed contestant's counsel to prepare findings and a formal judgment incorporating the verdict under Probate Code, section 373. The formal judgment was signed and entered on March 27, 1961. After reciting certain facts, it stated that Leo Kolligian was the duly appointed and acting special administrator of the estate and that the document dated January 12, 1960, be rejected and denied probate. Before judgment was entered on the verdict, a motion for judgment notwithstanding the verdict was made by respondents and denied. They reserved the right to move for a new trial under Code of Civil Procedure, section 629. A notice of motion to move for a new trial was filed March 30, 1961. It recited that:

". . . defendants and respondents, AZNIV ATMAJIAN, ARSHALOUS AMETJIAN and GUERAGOS MANASELIAN, intend to move the above-entitled court to vacate and set aside the verdict and judgment rendered in the above action, and to grant a new trial of the said cause. . . ."

It was based on all the statutory grounds including insufficiency of the evidence to justify the verdict and judgment. The order granting the new trial stated that:

". . . the motion for new trial made by defendants and respondents, AZNIV ATMAJIAN, ARSHALOUS AMETJIAN and GUERAGOS MANASELIAN, be, and it hereby is, granted on the ground of the insufficiency of the evidence to justify the verdict."

It should be here noted that contestant now claims he has some sort of final judgment as against Azniv Atmajian as proponent of the will because, as such, she did not move for a new trial and none was granted to her in that capacity. We will now discuss this question, which appears to us to be unsound. No judgment was entered against her in her representative capacity. The judgment was that the instrument offered be denied probate. The motion for a new trial was granted on the grounds of insufficiency of the evidence. Describing her as proponent of the will, or as executrix named

in the will, or as a legatee or devisee under the will, would have merely been *descriptio personae* and inconsequential. Even if judgment had been entered against her in any representative capacity, it could not have survived the granting of the new trial to respondents. (*Estate of Sanderson,* 183 Cal. App.2d 740, 742 [6 Cal.Rptr. 893].) This same argument was made as to Leo Kolligian, the special administrator, and the same conclusion must be reached in respect to him. The special administrator was not a party to the action. No judgment was rendered against him as such which would affect the validity of the will. In effect, the judgment entered by the trial court on March 27, 1961, was set aside and a new trial granted.

In 36 California Jurisprudence 2d, section 168, pages 378-379, it is said:

"The general rule is that an order granting a new trial vacates and sets aside the verdict or other decision and any judgment resting thereon. Unless the order is limited to certain parties or issues, it reopens all the questions for retrial as to all parties, placing them in the position they held before any trial was had. The court may thereafter hear and determine the case anew, and the vacated judgment is not res judicata in a subsequent action, notwithstanding that the party sought to be precluded thereby did not make a motion for new trial or appeal."

See also *Thompson* v. *Smith,* 28 Cal. 527; *Casterline* v. *Young,* 167 Cal.App.2d 669, 673 [334 P.2d 966]; *Lee* v. *Cranford,* 107 Cal.App.2d 677, 681 [237 P.2d 986].

The principal question is whether the trial court erred and abused its discretion in granting a new trial for insufficiency of the evidence in face of the evidence produced. It is contestant's claim that the authorities hold that before a trial court is authorized to grant a new trial on this ground, there must be either an absence of evidence or evidence lacking in probative force to establish the proposition of fact to which it is directed and that it is error to grant a new trial unless the evidence would warrant a judgment in favor of the moving party. Citing such authority as *Mosekian* v. *Ginsberg,* 122 Cal.App. 774, 777 [10 P.2d 525]; *Renfer* v. *Skaggs,* 96 Cal. App.2d 380, 383 [215 P.2d 487]; *Moss* v. *Stubbs,* 111 Cal.App. 359, 363 [295 P. 572, 296 P. 86]; *Ellis* v. *City of Los Angeles,* 167 Cal.App.2d 180, 186 [334 P.2d 37].

A collection of authorities on the rule is well set forth in *Yarrow* v. *State of California,* 53 Cal.2d 427, 434 [2 Cal. Rptr. 137, 348 P.2d 687], which recites generally that:

"All presumptions favor the order as against the verdict and the order will be affirmed if it may be sustained on any ground, although the reviewing court might have ruled differently in the first instance. . . .

██ "In considering the sufficiency of the evidence on the hearing of a motion for new trial it is the exclusive province of the trial court to judge the credibility of the witnesses, to determine the probative force of testimony and to weigh the evidence, and it may draw reasonable inferences therefrom opposed to those drawn by the trier of fact at the trial. [Citing cases.] ██ It is only where it can be said as a matter of law that there is no substantial evidence to support a contrary judgment that an appellate court will reverse an order granting a new trial on this ground. [Citing cases.] Error is not presumed and the burden is upon the [appellant] to affirmatively show its presence in the record [citing cases] or a manifest and unmistakable abuse of discretion." [Citing cases.]

### EVIDENCE

Deceased died a widower on June 3, 1960, in Fresno, and left no surviving parents or children. Contestant Mano Masrobian was his brother. The beneficiaries under the will were his nephew and nieces. Decedent lived in a rooming house between 1955 and 1960 and was partially cared for by George and Ardy Masrobian, the son and daughter-in-law of contestant. Witnesses testified that the deceased made a statement to the effect that he was going to leave everything he had to George and Ardy. In 1955, he made a will in their favor. Other witnesses testified that in 1959 Arshalous Ametjian and Azniv Atmajian attempted to win over deceased's affections, bought him liquor and tried to persuade him to make his will in their favor; that his health failed and he forsook his brother Mano, George and his wife, and would heed only Azniv and Arshalous; that these two persons falsely told deceased that George and Ardy were already rich, had $50,000 and did not need money.

Contestant's witnesses further testified that deceased, at times, had hallucinations and tried to leave home in his pajamas; that he accused George and Ardy of poisoning his (decedent's) wife; that he was under the influence of liquor half of the time; that he threw away his food; that he asked for a gun, believing people were trying to break into his room; that at times between September 1959 and January 12, 1960, he would say he was going to leave all his money to George

and Ardy; that later he would say he was going to leave it to his brother, and then he would say he was going to leave it to his landlady and others; that at Christmas time in 1959, he talked irrationally and that he wrote irrational letters, copies of which were in evidence. One letter, dated November 7, 1958, was received in evidence as showing the comparison between his irrational writing and when he wrote intelligently.

The testimony of the landlady was that either on January 11, 1960, or January 12, 1960, about the date of the will under contest, deceased dressed up nicely; that she complimented him on it and he told her he was going downtown and make a will out to someone whose name sounded like "Arsenic and Old"; that she could not understand Armenian names very well and that on that day he was a confused and a heartbroken old man.

The attorney who drafted the will testified generally that he had practised law in Fresno for 28 years; that he had known George Masrobian for 15 or 20 years; and that in November of 1955 George brought Charles Masrobian to his office and a will was prepared and signed devising Charles' entire estate to George and his wife; that as to the will of January 12, 1960, he said that he knew Charles during his lifetime; that Charles came alone to his office and asked him to draw up a will leaving his estate to the named devisees, and left all necessary information with him; that he told Charles to return the next day and read it over and sign it if it was drawn according to his wishes; that the next day he went over the contents with the decedent and in the presence of his secretary, and that Charles said that it was what he wanted and signed it and asked that the attorney and secretary be his witnesses. Both testified that in their opinion decedent was of sound and disposing mind at the time and did not appear to be acting under the influence of any person whatsoever; that it appeared to be his free and voluntary act and he did not appear to be intoxicated at the time; that his speech was sober and they smelled no liquor on him and he expressed satisfaction with the terms of the will.

Azniv Atmajian testified generally that between October 1959 and the date of his death, she visited decedent quite often; that she had never seen him in an intoxicated condition; that she never supplied him with any intoxicating liquor; that he left his will and insurance papers with her for safekeeping when he went to Chicago; that on his deathbed he had her

called first and she came to his rooming house and then called a doctor; that he told her to take his will and papers with her because he thought that was the end; that at all times decedent was well-dressed, clean and very fastidious; that on one occasion Charles told her of troubles he was having with George and his wife regarding the will and that she did not know whether or not Charles had any money and never discussed it with her sister.

One George W. Conlisk, who roomed next door to decedent from 1955 to September 1960, knew deceased well during his later years. He testified that he never saw decedent intoxicated up to the time of his death; that up to that time decedent conversed in an intelligent manner and he saw "nothing wrong" with his conversation; that decedent was clean in his dress and personal habits; that decedent awakened him the night of his death and he called a telephone number given him by decedent and a woman and her husband responded.

Another roomer testified that he lived there for 15 years and knew deceased while he lived there and more intimately during the past one and one-half years; that he never saw deceased in an intoxicated condition; that decedent walked around without assistance; that visitors came and decedent referred to them as his "cousins"; that he never saw or heard of any incidents as related by the landlady in reference to decedent's conduct; that decedent was always rational and normal and never showed any signs of weakness.

The rule as to directed verdicts, as stated in *Estate of Caspar,* 172 Cal. 147 [155 P. 631], is not that a verdict may be directed whenever the evidence is such that upon motion the court would grant a new trial, for the court may grant a new trial even when there is substantial evidence to sustain the verdict if it believes that the evidence preponderates against the verdict, but a verdict should be directed whenever, upon the whole evidence, the court would be compelled to set aside a contrary verdict as unsupported by the evidence. See also *Estate of Mickelson,* 37 Cal.App.2d 450 [99 P.2d 687]; *Estate of Hettermann,* 48 Cal.App.2d 263 [119 P.2d 788].

Contestant appeals from the order granting a new trial and respondents appeal from the order denying their motion for judgment notwithstanding the verdict. Under the circumstances, the order denying respondents' motion for judgment notwithstanding the verdict may be reviewed on appeal from such an order. (Code Civ. Proc., § 629; Cal. Rules of

Court, rule 3.*) Upon the evidence produced, the trial court was authorized to deny a motion for judgment in favor of the proponent and legatees notwithstanding the verdict.

Contestant claims that a great amount of testimony produced by him was "uncontroverted" and accordingly it must be accepted as true, and viewed in this light the court erred and abused its discretion in granting a new trial on the grounds of the insufficiency of the evidence.

Much stress is laid on the fact that the devisees were referred to as "cousins" in the will, when they were in fact nieces and a nephew. A reading of the testimony might well indicate that deceased referred to them as "cousins" during his lifetime. He told his fellow rooming house guests that his "cousins" were visiting him. Their true relationship may be questioned. Deceased told proponent that her "father's father and mine were the children of two brothers." The particular claim that deceased did not have in mind the objects of his bounty because of this fact appears to us to be overemphasized. ██ In the examination of the evidence, we are first confronted with the presumption that Charles Masrobian was of sound mind at the very moment that he executed the will offered for probate, and the burden of overcoming this presumption is on the contestant. (*Estate of Jamison,* 41 Cal.2d 1, 13 [256 P.2d 984].)

██ On the motion for a new trial, it was the function of the trial judge to weigh the evidence and to determine whether, in his judgment, contestant had overcome such presumption. However, the presumption did not stand alone. It was supported and fortified by the testimony of Attorney Magarian and Miss Gregorian, his secretary, respecting the preparation and execution of the will. There was other evidence produced indicating that deceased did not become or remain intoxicated, as claimed by some of contestant's witnesses, and that deceased's mind about the time the will was executed was rational and normal and that he never showed any signs of weakness. There is considerable evidence opposed to this evidence, which may have led the jury to believe otherwise, but this is not the question before us. ██ The evidence of undue influence in the execution of the will was open to conjecture. We have no right to express our opinion on the weight of the evidence in this respect. The trial court had the right to reweigh all the evidence under the authorities

*Formerly Rules on Appeal, rule 3.

cited. We perceive no abuse of discretion in this respect. (*Estate of Ross,* 204 Cal.App.2d 82 [22 Cal.Rptr. 135]; *Estate of Warner,* 166 Cal.App.2d 677 [333 P.2d 848]; *Estate of Arnold,* 16 Cal.2d 573 [107 P.2d 25].)

Order granting motion for new trial and denying respondents' motion for a judgment notwithstanding the verdict affirmed.

Shepard, J., concurred.