398 P.2d 926

In the Matter of the ESTATE of George S. THOMPSON, Deceased.

Warren BASS, Appellant,

v.

Robert H. RENAUD, Appellee.

No. 2 CA–CIV 24.

Court of Appeals of Arizona.

Feb. 11, 1965.

Rehearing Denied March 16, 1965.

Review Denied April 27, 1965.

Shimmel, Hill, Kleindienst & Bishop, by Richard G. Kleindienst, Phoenix, for appellant.

Lewis, Roca, Scoville, Beauchamp & Linton, by John P. Frank, Phoenix, for appellee and cross-appellant.

MOLLOY, Judge.

This appellate proceeding arises from a will contest filed prior to the admission of a will to probate. The deceased,. George S. Thompson, was a man of 94 years of age at the time of his death on September 9, 1960. The will over which this contest arises is one executed by the deceased on on November 9, 1959.

The grounds of contest upon which a trial was conducted were that the deceased lacked testamentary capacity at the time of the execution of the will and was under undue influence of one or more of the beneficiaries. The contestant is Warren Bass, a grandson of the deceased. The contestant is not an heir at law of the deceased, as there were children of the deceased surviving who would inherit under the laws of intestacy, but his interest in the estate is established by the fact that there was a prior will executed by the deceased which left the entire beneficial interest of the estate to the contestant.

The case was tried to a jury. At the conclusion of the contestant's opening case the court indicated that it was directing a verdict in favor of probate on the issue of undue influence. The trial proceeded on the issue of lack of testamentary capacity, and at the conclusion of the trial, the jury rendered a verdict in favor of the contestant.

The proponent of the will, Robert H. Renaud, who was named as executor therein, filed a motion for new trial and for judgment notwithstanding the verdict. Thereafter, the trial court entered an order:

"* * * that a new trial be had and granted on all issues pertaining to this cause under the provisions of Rule 59, A.R.S.1956, and for the particular reasons that the granting of a directed verdict by the court as to the issue of undue influence at the close of Plaintiff's case was premature, and that there was not sufficient evidence of the legal incompetency of the testator at the time of the execution of the Will on November 9, 1959, based upon the statutes of the State of Arizona and the interpretations of our Supreme Court, to sustain the verdict of the jury in this particular matter."

As far as is shown by the record, there has never been any specific ruling upon the motion of the proponent for a judgment notwithstanding the verdict.

At the time of his death, the deceased was the owner of approximately 105 acres of land in the Apache Junction area. This acreage was the remaining portion of a homestead taken out by the deceased many years ago. The will leaves 75 acres of this land to fifteen different devisees, five acres each. These devisees are the contestant and his wife, and thirteen different children who in various ways had come to be known to the deceased prior to his death. Three of the devisees are minor children of the proponent, Robert H. Renaud, the deceased's attorney who prepared the will in question. The remaining thirty acres of land according to the will were to be used for costs of administration, and any overage was to go in equal shares to the fifteen devisees.

The contestant has filed an appeal from the order granting a new trial, and the proponent has filed a cross-appeal, appealing from "the failure and refusal to grant to Defendant-Petitioner a judgment notwithstanding the verdict" and from that portion of the order granting a new trial which reads: "* * * that the granting of a directed verdict by the court as to the issue of undue influence at the close of the plaintiff's case was premature * * *".

The assignments of error require the court to examine the rather lengthy transcript of the testimony.

Testifying for the contestant was the medical doctor of the Veteran's Adminis-

tration who had treated the deceased from the summer of 1956 until November of 1959 for arteriosclerosis. This doctor, Dr. Doris Rowe, testified that during the period which she treated the deceased there was a gradually advancing condition of cerebral arteriosclerosis, which resulted in his becoming mentally incompetent sometime in the summer of 1959. She testified to various behavioral manifestations of the disease, in his gait, appearance and conversation. She testified his conversation became "childlike", with a fixation upon the past and upon little children in the neighborhood of where he lived. She testified that on November 9, 1959 the deceased was not mentally competent to know the natural objects of his bounty and was not mentally competent to know and understand the natural consequences of his acts dealing with his property and his business.

The grandson-contestant testified that during the latter part of his life the deceased was forgetful and childlike and that, in his opinion, the deceased was not mentally competent at the time of the making of the will in question.

On June 10, 1960, a petition for the appointment of guardian for the deceased was filed by the grandson, alleging that the deceased was mentally incompetent to manage his property. The proponent of the will, Robert H. Renaud, acted as the grandson's counsel in this proceeding. As the result of this petition, there was an order entered sometime in June, 1960, declaring the deceased to be incompetent and appointing the grandson as the guardian.

Opposed to this testimony was that of twenty-seven witnesses called by the proponent, who testified that the deceased was until shortly before his death a very alert old man, keenly aware of his whereabouts and circumstances and fully capable of managing his own business affairs. Two of the witnesses were newspaper reporters who had interviewed the deceased in close proximity in time to the execution of the will in question. The deceased was, during his latter years, a natural subject for news-

paper feature writers, in that he was the last known survivor of the Spanish-American War who had been awarded the Purple Heart.

Nowhere in the record is there direct testimony of conduct by any of the beneficiaries that could be classified as undue influence upon the testator.

On appeal, the contestant takes the position that there was substantial evidence to support the verdict of the jury, and that therefore the trial court was in error in granting a new trial. The contestant argues that a will contest is a special proceeding, within the context of the probate code, and that the provisions of the code are mandatory. According to the contestant, A.R.S. § 14–354 is controlling. This statute reads:

"The jury shall return a special verdict upon the issues submitted to it, upon which the court shall enter judgment either admitting or rejecting the will to probate."

It is well established in this state that a trial court, in other than a probate proceeding, has broad discretion in granting a new trial when the court does not believe that the evidence justifies a jury verdict. A recent case, in a long line of such cases, is Gillespie Land and Irrigation Company v. Gonzalez, 93 Ariz. 152, 379 P.2d 135.

Unless the above quoted statute takes away this discretion, the ruling of the trial court was well within its discretion. The evidence is in sharp conflict, and reasonable men might well differ on the interpretation thereof.

The contestant has called the attention of the court to no case law which indicates in any way that this discretion of the trial court is eliminated by the subject provision of the probate code. Our probate code was adopted from our sister state of California. The California Probate Code is substantially the same as our own on this subject:

"The jury must return a special verdict upon the issues submitted to them by the court; and upon the verdict, or

upon the proof taken if a jury is waived, the court must render judgment, either admitting the will to probate or rejecting it." West's Annotated Probate Code, § 373.

The California courts appear to have had no trouble holding that the general rules pertaining to the granting of a motion for new trial pertain to a will contest. A recent case is In re Masrobian's Estate, 207 Cal.App.2d 133, 24 Cal.Rptr. 263, (4th Dist.) (1962). In this California case there had been a jury verdict for the contestant, the finding being that there was lack of testamentary capacity and undue influence. There, as here, a motion for judgment notwithstanding the verdict was denied, but a new trial was granted by the court. The court stated, in part: " * * * the court may grant a new trial even when there is substantial evidence to sustain the verdict if it believes that the evidence preponderates against the verdict, * * *."

A.R.S. § 14–1201 provides that provisions relating to procedure in civil actions shall constitute the rules of practice under the probate code. It is not felt by this court that it was the legislative intent by the adoption of A.R.S. § 14–354 to restrict the power and duty of a trial court to grant a new trial. The situation is analogous to the constitutional requirement that the defense of contributory negligence "shall, at all times, be left to the jury". Const. art. 18, § 5, A.R.S. This does not prevent a trial court from granting a new trial as the purpose of the provision is sufficiently met by according a jury upon the new trial. General Petroleum Corp. v. Barker, 77 Ariz. 235, 244, 269 P.2d 729. Therefore this court holds that the trial court rightfully looked to Rule 59, Rules of Civil Procedure, in determining whether a new trial should be granted in this case, and that the granting thereof was not an abuse of discretion.

■ As to the cross-appeal, the court first notes that the denial of a motion notwithstanding the verdict is not an appealable order. A.R.S. § 12–2101. Under analogous statutory provisions regarding appeals, a California appellate court has so held. In re Hettermann's Estate, 48 Cal. App.2d 263, 119 P.2d 788 (2d Dist.) (1941).

■ However, the trial court in this case did sign an order granting a new trial. Necessarily, implicit in such an order is a denial of the motion for judgment notwithstanding the verdict. That which is necessarily implied by a judgment is included therein. Keystone Copper Mining Co. v. Miller, 63 Ariz. 544, 555, 164 P.2d 603 (1945). Accordingly, this court construes the cross-appeal to be as to the order granting a new trial, which is an appealable order. A.R.S. § 12–2101, subsec. F(1).

The cross-appellant concedes that if there is any substantial evidence in the record from which reasonable men might come to the conclusion that the deceased lacked testamentary capacity on the date in question, the motion for judgment notwithstanding the verdict should have been denied. The proponent contends, however, that the conclusions expressed by the two witnesses for the contestant are not supported by facts and that, taking the evidence as a whole, reasonable men could not differ but that the deceased had sufficient testamentary capacity on November 9, 1959.

The court has examined the evidence carefully and is of the opinion that the testimony of Dr. Doris Rowe, standing alone, would be sufficient to go to the jury on the question of testamentary capacity. It seems to this court that this doctor was intimately acquainted with the physical and mental condition of the deceased and that reasonable men might choose to accept her statements as to the physical and mental condition of the testator.

■ The test on granting a motion for judgment notwithstanding the verdict is the same as that pertaining to the direction of a verdict during the trial. The evidence must be viewed in a light most favorable to sustain the verdict and if there is any substantial evidence from which reasonable men could have found the ultimate facts to be such as to sustain the verdict, the

motion for judgment notwithstanding the verdict should be denied. Tucson Title Insurance Company, v. D'Ascoli, 94 Ariz. 230, 383 P.2d 119 (1963).

■ Though, as in the Hettermann's Estate case, supra, the large number of credible witnesses who testified for the proponent indicates that the trial court might very well have come to the conclusion that the evidence, as a whole, preponderated in favor of the proponent, nevertheless this court holds that the denial of the motion for a judgment n. o. v., as impliedly ordered by the court in its granting of a new trial, was proper.

There remains the question of whether or not the trial court erred in granting a new trial as to all issues, including that of undue influence.

■ The general law is:

"A party may not demand as a right that a new trial be restricted to one or more issues, and generally the limiting of a new trial to part of the issues lies within the sound discretion of the trial court, * * *."

"It has been said that the granting of partial new trials is a practice not to be commended, and that the courts recognize much opportunity for confusion and injustice in adopting and applying this practice. Accordingly, the rule is to be applied with caution with a view to the furtherance of justice; if a second trial, limited to one issue, might be prejudicial to either party, the ordering of such a trial would be an abuse of discretion, and any doubt in that connection should be resolved in favor of a trial on all the issues."

66 C.J.S. New Trial § 11, pp. 89, 90.

Our Supreme Court on several occasions has held that it is error to grant a new trial to only the issue of damages, after a jury verdict which was either inadequate or excessive. Southern Pacific Co. v. Gastelum, 36 Ariz. 106, 283 P. 719; Tovrea Equipment Co. v. Gobby, 72 Ariz. 38, 230 P.2d 512; Mayo v. Ephrom, 84 Ariz. 169, 325 P.2d 814.

The rationale of these opinions appears to be that there is some interrelationship of issues between damages and liability, and that if the issue of liability is closely contested, it would be prejudicial to the defendant to retry the case on the issue of damages alone.

Our court has never held that the granting of a new trial as to all issues, rather than as to particular issues, is erroneous.

■ In this case, there is some interrelationship between the issues. Whether or not undue influence was practiced is in part determined by what the mental capacity of the testator was to resist such influence.

■ It is a law in this state that if there existed a fiduciary relationship between the testator and the person actively taking part in the preparation of the will, and if such person is a "principal beneficiary", then there arises the legal presumption of undue influence. It is further the law that once the person as to whom the undue influence is presumed takes the stand and negates such presumption by his testimony, the presumption disappears. In re Pitt's Estate, 88 Ariz. 312, 356 P.2d 408 (1960).

■ In this action, the cross-appellant contends that even though Robert H. Renaud did occupy a fiduciary relationship within the rule, nevertheless he is not a "principal beneficiary". In this action, three minor children of this attorney inherited one-fifth of the entire estate, and the attorney was named as executor of the will. No other family is as much benefited by this will. The court holds that this is sufficient to make the attorney a "principal beneficiary" under the foregoing rule.

■ The cross-appellant further contends that even if the presumption prevailed, the same was completely dispelled by the testimony of the two subscribing witnesses who were called to prove the will at the beginning of the trial, who testified that in their opinion there was no undue influence practiced.

These witnesses arrived at the testator's house very shortly before the will was signed and the testator's attorney was there

before them. Obviously, these witnesses could not know whether or not any undue influence was practiced, and this court holds that their testimony did not destroy the legal presumption. Accordingly, this court holds that the trial court was premature in directing verdict on the issue of undue influence at the conclusion of the contestant's case, and that the order directing a new trial as to all issues was proper.

Accordingly, it is the judgment of this court that the order of the trial court granting a new trial is affirmed.

HATHAWAY, J., and LEE GARRETT, Superior Court Judge, concur.