[No. D002200. Fourth Dist., Div. One. Feb. 11, 1986.]

A. JOHN PELLETIER, Plaintiff and Appellant, v.
JEROME M. EISENBERG et al., Defendants and Respondents.

COUNSEL

John J. O'Connell, Jr., for Plaintiff and Appellant.

Jennings, Engstrand & Henrikson, William C. Pate and David Semelsberger for Defendants and Respondents.

OPINION

**WORK, J.**—A. John Pelletier sued Jerome M. Eisenberg, Betty Eisenberg and The Galleries at La Jolla (owned by the Eisenbergs) (hereafter referred to collectively as Eisenbergs) for conversion, breach of trust, and damage to and destruction of fine art. (Civ. Code, § 1738 et seq.) The jury returned a verdict in favor of Pelletier. The Eisenbergs were granted a new trial limited to the measure of damages for the loss of the paintings and the damages assessed for Pelletier's pursuit of converted insurance proceeds. After the court granted the Eisenbergs a new trial, Pelletier moved for a new trial. His motion was denied as untimely. Pelletier appeals the trial court's grant of the Eisenbergs' motion for new trial and denial of his own motion. We affirm the denial of Pelletier's motion, and affirm in part and reverse in part the grant of the Eisenbergs' motion.

## FACTS

Pelletier, an artist, consigned 10 paintings to the Eisenbergs' art gallery. Nine paintings were destroyed or damaged in a fire. A bifurcated trial produced two special jury verdicts. The first verdict separately assessed the fair market value of each painting;[1] found the paintings entrusted to the Eisenbergs; and separately assessed the losses, in addition to fair market value, Pelletier would suffer from future income or benefits from each painting.[2] The second verdict found the Eisenbergs had converted the insurance proceeds from the paintings; assessed the damages for time and money expended in pursuit of the property ($42,500); and found the Eisenbergs were *not* guilty of oppression, fraud or malice. The trial court entered a judgment on the verdict for $55,603, plus interest on a portion of the amount.

The trial court granted the Eisenbergs' motion for new trial[3] only on the issues of (1) whether Pelletier was entitled to the fair market value of the paintings without reduction for the 40 percent commission due the Eisenbergs if the paintings were sold under the consignment contract; and (2) the amount to which Pelletier was entitled for time and money spent pursuing the converted insurance proceeds.

Regarding the first issue, the trial court stated it was a legal issue for the judge at the new trial to determine the proper method for computing the damages and then compute them, using the fair market value already assessed by the jury. Regarding the second issue, the trial court stated it could not substantiate the $42,500 with the evidence received on the amount spent to recover the converted insurance proceeds. The trial court noted it would be more equitable to grant a new trial on both the issues of damages for pursuit and punitive damages, because the jury may have erroneously believed they could award the extra damages as compensatory damages. However, the trial court concluded it had no authority to include the issue of punitive damages in the new trial order since no motion was made on that ground. On June 25, 1984, Pelletier filed and served a notice of intention to move for new trial on the issue of punitive damages. This motion was denied as untimely.[4]

---

[1]The fair market value of the paintings was assessed at $3,750; $4,000; $1,500; $1,125; $3,500; $1,188; $813; $4,250; and $1,563 (total $21,689).

[2]The future losses for the paintings was assessed at $487; $519; $195; $146; $454; $154; $106; $552; $203 (total $2,816).

[3]The trial court also partly granted the Eisenbergs' motion for judgment notwithstanding the verdict, finding no individual liability (as opposed to corporate liability of the art gallery) for the loss of the paintings under Civil Code section 1738 et seq. The individual liability for conversion, however, was not changed. Pelletier did not appeal the granting of the motion for judgment notwithstanding the verdict.

[4]Pelletier also unsuccessfully moved for a judgment notwithstanding the verdict and for reconsideration of the granting of the Eisenbergs' motion.

I

## The Granting of a Motion for New Trial Does Not Allow the Nonmoving Party a Second Opportunity to Move for a New Trial Absent a New Judgment

██ California Code of Civil Procedure[5] section 659 states: "The party intending to move for a new trial must file with the clerk and serve upon each adverse party a notice of his intention to move for a new trial, . . .

". . . . . . . . . . . . . . . . . . . . . .

"2. Within 15 days of the date of mailing notice of entry of judgment by the clerk of the court pursuant to Section 664.5, or service upon him by any party or written notice of entry of judgment, or within 180 days after the entry of judgment, whichever is earliest; *provided, that upon the filing of the first notice of intention to move for a new trial by a party, each other party shall have 15 days after the service of such notice upon him to file and serve a notice of intention to move for a new trial.*" (Italics added.)[6]

Here, Pelletier served a notice of entry of judgment on April 10, 1984. The Eisenbergs served and filed their notice of intention to move for new trial on April 17, and 19, respectively, 1984. On June 25, 1984, Pelletier filed and served his notice of intention to move for new trial, which was not within the required 15 days after service of the Eisenbergs' notice of intention.

Pelletier argues he should have been able to wait until after an adverse ruling on the Eisenbergs' motion for a new trial before being required to make his own motion for a new trial, citing *Bond* v. *United Railroads* (1915) 169 Cal. 273, 275 [146 P. 688]; *Woodcock* v. *Fontana Scaffolding & Equip. Co.* (1968) 69 Cal.2d 452, 460 [72 Cal.Rptr. 217, 445 P.2d 881]; *Machinery etc. Co.* v. *University City Synd.* (1934) 3 Cal.App.2d 425, 426 [39 P.2d 853]. These cases indicate after an initial judgment is vacated and a new judgment entered, the time for serving a notice of intention to move for a new trial begins to run from the entry of the new judgment.

---

[5]All statutory references are to the Code of Civil Procedure unless otherwise specified.

[6]Additionally, section 660 provides that "the power of the court to rule on a motion for a new trial shall expire 60 days from and after the mailing of notice of entry of judgment by the clerk of the court pursuant to Section 664.5 or 60 days from and after service on the moving party by any party of written notice of the entry of the judgment, whichever is earlier, or if such notice has not theretofore been given, then 60 days after filing of the first notice of intention to move for a new trial."

These cases do not help Pelletier, however, because the trial court's ruling on the Eisenbergs' motion for a new trial did not result in a new judgment.

■ As a general rule, an order granting a new trial sets aside the verdict and judgment. (*Estate of Masrobian* (1962) 207 Cal.App.2d 133, 137 [24 Cal.Rptr. 263].) When a new trial order is limited to certain issues, the portion of the judgment pertaining to those issues is vacated; however, the portion of the judgment pertaining to the unaffected issues remains in place and becomes final once the time for appeal passes. (*Karallis* v. *Shenas* (1950) 97 Cal.App.2d 280, 283 [217 P.2d 436]; *Kudokas* v. *Balkus* (1972) 26 Cal.App.3d 744, 749-750 [103 Cal.Rptr. 318].) ■ A vacation of a judgment does not create a new judgment. To the contrary, a vacated judgment is a "nonexistent judgment." (*Id.,* at p. 749.)[7]

■ As the trial court's ruling did not create a new judgment, Pelletier was required to file and serve his notice of intention within 15 days after service of the Eisenbergs' notice, as required by section 659. His untimely filing deprived the trial court of its jurisdiction to entertain the motion. (*Ehrler* v. *Ehrler* (1981) 126 Cal.App.3d 147, 151, 153 [178 Cal.Rptr. 642].)

II

THE TRIAL COURT ERRED IN GRANTING A NEW TRIAL ON THE SINGLE ISSUE OF COMPENSATORY DAMAGES WHEN JUSTICE REQUIRES A NEW TRIAL ON BOTH PUNITIVE AND COMPENSATORY DAMAGES

During the second phase of the trial, the jury returned a special verdict finding (1) the Eisenbergs converted the insurance proceeds from Pelletier's paintings; (2) the fair compensation for the time and money properly expended by Pelletier in the pursuit of his converted property was $42,500; and (3) the Eisenbergs were not guilty of oppression, fraud, or malice. Because the jury found no oppression, fraud, or malice, it did not reach the question of the amount of punitive damages warranted.

The trial court granted the Eisenbergs' motion for a new trial only on the limited issue of the amount of time and money expended in pursuit of the converted property. The court reviewed the evidence, saw it did not substantiate the $42,500, and concluded the amount must be based on either attorney fees (which are not allowable) or punitive damages. The court

---

[7]Consistent with the principle a vacated judgment is a nonexistent judgment, res judicata does not operate to prevent the nonmoving party, after the granting of a motion for a new trial, from relitigating the issues at the new trial. (*Estate of Masrobian, supra,* 207 Cal.App.2d 133, 137.)

stated: "Very little time was spent discussing this actual section (Civil Code § 3336[8]) at trial, as the focus was on punitive damages, which could have been awarded but were not.

". . . . . . . . . . . . . . . . . . . . . . . .

". . . It could be that they did not award punitive damages, because they believed (as the instructions allowed them to) that they could award these compensatory damages instead. Had they not been so instructed, they may have awarded punitive damages. *Therefore, it appears more equitable to award a new trial on both the issues of compensatory damages under Civil Code § 3336 and punitive damages, although the latter has not been requested. . . .*

"*In any event, since nobody made a motion for a new trial on the punitive damages issue, this court has no authority to grant one.*"[9] (Italics added.)

▉ Pelletier argues the trial court should have interpreted the jury's award of $42,500 as including punitive damages and denied the motion for new trial,[10] or alternatively, should have granted a new trial on the issue of punitive damages as well.

In support of his first argument, Pelletier points out the jury found specifically a consignment in trust to the Eisenbergs, and the jury was instructed a violation of a trust relationship is a fraud against the beneficiary of the trust. (Civ. Code, § 2234.) Therefore, the jury found the Eisenbergs converted the entrusted property, it found fraud as a matter of law, and irrespective of the specific finding there was no fraud, the award may be upheld as punitive damages.

First, even though a fraud arising from the breach of the trust relationship would *justify* an award of punitive damages, it does not automatically *require* it. ▉ "A plaintiff, upon establishing his case, is always entitled of right to compensatory damages. But even after establishing a case where

---

[8]Civil Code section 3336 states in pertinent part: "The detriment caused by the wrongful conversion of personal property is presumed to be:

". . . . . . . . . . . . . . . . . . . . . . . .

"Second—A fair compensation for the time and money properly expended in pursuit of the property."

[9]In the trial court's memorandum of decision responding to Pelletier's untimely motion for a new trial, the court reiterated: "Had plaintiff filed a Motion for New Trial in a timely manner on punitive damages, this court probably would have granted it with the granting of defendant's Motion for New Trial on conversion damages."

[10]Pelletier does not attempt to justify the $42,500 as reasonably related to the amounts spent in pursuit of the property.

punitive damages are permissible, *he is never entitled to them* .... Upon the clearest proof of malice in fact, it is still the exclusive province of the jury to say whether or not punitive damages shall be awarded." (*Brewer* v. *Second Baptist Church* (1948) 32 Cal.2d 791, 801 [197 P.2d 713].) (Italics added.)

 It is possible the jury thought it could award the equivalent of punitive damages as damages suffered in pursuit of the converted property. But it is equally possible it merely overassessed the losses incurred in pursuit of the property.

We agree with the trial court the equitable way to correct the ambiguity is to retry both the issues of compensatory damages for Pelletier's pursuit of the converted property and the punitive damages, if any, warranted for the conversion. Contrary to the trial court's belief, it does have jurisdiction to order a new trial on both issues in the interest of justice even though the motion for a new trial addresses only one issue.

In *Hamasaki* v. *Flotho* (1952) 39 Cal.2d 602, 608-609 [248 P.2d 910], the California Supreme Court held: "[W]hen he [a party] is seeking relief in the trial court by way of a new trial, he ordinarily may seek a retrial only of the issues on which the decision has been adverse to him .... [H]owever, situations may arise where the issues are so interwoven that a partial retrial would be unfair to the other party. When, as in the present case, for instance, the jury has, by compromising the issues of liability and damages, inextricably interwoven those issues, a retrial of the damages issue alone based on the erroneous assumption that defendant's liability has been determined would be extremely unjust to him. A situation is thus presented where the plaintiff has been aggrieved, but the specific relief he seeks may not be granted without doing an injustice to the defendant. Since the relief requested may not be granted, the trial court, if the issue is presented by motion for a limited new trial, or the appellate court, if the issue is presented by a partial appeal, must do one of two things. It must either deny all relief, or order a new trial on both issues. In the case of partial appeals it is settled that the court may review as much of the judgment as is necessary to give the appellant the relief he seeks even though it is necessary to reverse parts of the judgment with which he has no quarrel and from which neither party has appealed. ([Citations]; *Bailey* v. *Bailey,* 60 Cal.App.2d 291, 293 [140 P.2d 689].) Logically the same rule should govern the trial court when passing on a motion for a limited new trial."

The Supreme Court continued by stating, in cases where a limited new trial is unjust, if the moving party prefers no new trial as opposed to a

complete new trial, he should inform the court. (*Hamasaki* v. *Flotho, supra,* 39 Cal.2d 602, 609-610.)

The holding in *Hamasaki* has been followed in *Flores* v. *Brown* (1952) 39 Cal.2d 622, 632-633 [248 P.2d 922], and *Kralyevich* v. *Magrini* (1959) 172 Cal.App.2d 784, 786, 793 [342 P.2d 903]. (See also *People* ex rel. *Dept. of Public Works* v. *Mascotti* (1962) 206 Cal.App.2d 772, 776 [23 Cal.Rptr. 846], and *Manor Investment Co.* v. *F. W. Woolworth, Co.* (1984) 159 Cal.App.3d 586, 597-598 [206 Cal.Rptr. 37].) ■ The reasoning of *Hamasaki* is consistent with the well-established rule, in cases where the motion for new trial addresses all the issues, it is an abuse of discretion for the trial court to grant a limited new trial when it might be prejudicial to either party. (*Liodas* v. *Sahadi* (1977) 19 Cal.3d 278, 286 [137 Cal.Rptr. 635, 562 P.2d 316].)

### III

### The Trial Court Erred in Granting a New Trial to Determine Damages for the Loss of the Paintings

■ On the issue of the damages for the loss of the paintings, the jury instructions included the following: "An art gallery consignee is not entitled to a commission if the artwork consigned is destroyed and not sold. The artist is entitled to recover 100% of the fair market value, whether that is less or more than any consignment contract, in the event of the art's destruction or loss. A commission agreed upon for the sale of artwork is not binding if the item is destroyed as compared to being sold."

In granting the Eisenbergs' motion for a limited new trial, the trial court concluded it was error to award Pelletier the fair market value rather than the wholesale value (i.e., 60 percent of the selling price) he would have received had the paintings been sold. We find the trial court correctly instructed the jury, and erroneously granted the motion for new trial. The Civil Code provisions governing the legal relationship between artists and art dealers state: "[t]he consignee shall be responsible for the loss of, or damages to, the work of fine art" (Civ. Code, § 1738.6, subd. (c)) and "[a]ny provision of a contract or agreement whereby the consignor waives any provision of this title is void" (Civ. Code, § 1738.8).

This is an action for damages arising from liability imposed by statute. Civil Code section 3333 states: "For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this Code, is the amount which will compensate for all the detriment proximately caused thereby, whether it could have been antici-

pated or not.'' ■ It is well established that under section 3333, the measure of damages for the loss or destruction of personal property is generally determined by the value of the property at the time of such loss or destruction. (*Lane* v. *Spurgeon* (1950) 100 Cal.App.2d 460, 463 [223 P.2d 889]; 4 Witkin, Summary of California Law (8th ed. 1974) Torts, § 911, p. 3198; see also *Heninger* v. *Dunn* (1980) 101 Cal.App.3d 858, 861-862 [162 Cal.Rptr. 104].)

■ We see no reason to depart from the standard fair market value measure of damages for the destruction of Pelletier's paintings.[11] The parties agreed to a commission if the paintings were sold, not if they were destroyed, and thus the Eisenbergs have not earned their commission. Since the paintings cannot be sold, Pelletier has lost all benefits emanating from a potential sale (i.e., enhancement of his reputation). Even payment of the full fair market value cannot compensate Pelletier for the intangible aspects of a work of art which are forever lost when the property is destroyed.[12] Indeed, the peculiar value which can be maintained only if the art work continues in existence is recognized in Civil Code section 987, which states: ''The Legislature hereby finds and declares that the physical alteration or destruction of fine art, which is an expression of the artist's personality, is detrimental to the artist's reputation, and artists therefore have an interest in protecting their works of fine art against such alteration or destruction; and that there is also a public interest in preserving the integrity of cultural and artistic creations.''[13] Pelletier would not be compensated for his losses if he had to pay for something which he never acquired (i.e., benefits from the sale of his paintings), and which the Eisenbergs never earned (i.e., the commission for the sale of the paintings). We conclude that the fair market value of the paintings is the most accurate measure of damages to compensate Pelletier for his losses.

We note that under Civil Code section 3358, ''Except as expressly provided by statute, no person can recover a greater amount in damages for the breach of an obligation, than he could have gained by the full performance thereof on both sides.'' This case falls within the exception in the first clause of Civil Code section 3358; that is, it is expressly provided by Civil Code section 1738, subdivision (c) that an art consignee is responsible for the loss of fine art. The absolute liability imposed under Civil Code section

[11]None of the cases cited by the Eisenbergs deal with works of art or analagous situations. This appears to be a case of first impression under Civil Code section 1738.6, subdivision (c).

[12]We note the jury in its special verdict did compensate Pelletier for *tangible* future losses resulting from the destruction of the paintings.

[13]Civil Code section 987 prohibits intentional or grossly negligent alteration or destruction of fine art.

1738, subdivision (c), regardless of the terms of the consignment contract, recognizes that the destruction of fine art results in peculiar losses to the artist apart from the "benefit of the bargain" losses normally arising from a failure to perform other types of obligations.

### DISPOSITION

The order of the trial court granting a limited new trial is reversed to the extent inconsistent with this opinion, and affirmed in all other respects. A new trial is ordered to determine the compensatory damages resulting from the pursuit of the converted property, and the punitive damages, if any, for the conversion of the property.

Wiener, Acting P. J., and Lewis, J., concurred.

A petition for a rehearing was denied March 6, 1986.