[No. D012413. Fourth Dist., Div. One. Sept. 10, 1991.]

REGINALD ERIC VALENZUELA, Plaintiff and Appellant, v.
CITY OF SAN DIEGO, Defendant and Respondent.

**COUNSEL**

Thomas T. Anderson and Douglas P. Miller for Plaintiff and Appellant.

John W. Witt, City Attorney, and Eugene P. Gordon, Chief Deputy City Attorney, for Defendant and Respondent.

**OPINION**

**WIENER, J.**—Plaintiff Reginald Eric Valenzuela appeals a summary judgment entered in favor of defendant City of San Diego. Valenzuela contends factual issues remain to be litigated in his claim the city is not immune from liability for severe and permanent injuries he sustained while diving at the Sunset Cliffs/Ocean Beach area of the City of San Diego. We disagree and affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On June 30, 1985, 17-year-old Valenzuela and a few friends went to the beach at Sunset Cliffs. Valenzuela and his friend Richard Harrison walked out to a rock projecting out over the water. Valenzuela dove from the rock into the water twice. On the second dive, he struck his head on the bottom and suffered severe injury to his spinal cord rendering him a quadriplegic.

On the day before the accident, Valenzuela and two other friends dove from the same rock. After his second dive that day Valenzuela's feet touched the bottom as he made his way to the surface. On both days, Valenzuela attempted to dive at a 45 degree angle to avoid striking the bottom. Although there were no warning signs regarding diving in the area where Valenzuela was injured, such signs were posted about a quarter mile south.

In opposing the motion for summary judgment, Valenzuela argued the City of San Diego was liable because it failed to warn occupants of the beach, especially minors, of known dangerous conditions which existed at Sunset Cliffs. The trial court disagreed and entered summary judgment in favor of the city on grounds it was immune from liability pursuant to Government Code sections 831.2 and 831.7.[1]

## DISCUSSION

*Dangerous Natural Condition*

Section 831.2 states:

"Neither a public entity nor a public employee is liable for an injury caused by a natural condition of any unimproved public property, including but not limited to any natural condition of any . . . beach." ■ The statute provides absolute immunity. It was enacted to avoid "the burden and expense of putting such property in a safe condition and the expense of defending claims for injuries [which] would probably cause many public entities to close such areas to public use." (Legis committee com., 32 West's Ann. Gov. Code (1980 ed.) § 831.2, p. 293 [Deering's Ann. Gov. Code (1982 ed.) § 831.2, p. 251].) Before a public entity loses this immunity, the statute requires some form of physical change in the condition of the property at the location of the injury. (*Bartlett* v. *State of California* (1988) 199 Cal.App.3d 392, 400 [245 Cal.Rptr. 327].) The city emphasizes Valenzuela does not contest that the rock from which he dove and the bottom of the ocean which he struck were both in a "natural condition" and "unimproved." Thus, it suggests no triable issue of fact exists and the city is immune as a matter of law.

■ Valenzuela argues section 831.2 is inapplicable because the city placed appropriate warning signs only a quarter of a mile south of the accident and thus created a dangerous condition requiring warning signs directly in the area of the accident. A similar argument was successfully made in *Gonzales* v. *City of San Diego* (1982) 130 Cal.App.3d 882 [182 Cal.Rptr. 73]. In *Gonzales*, a woman died as a result of a riptide condition at a city beach. The city voluntarily provided some lifeguard and police protection services at the beach, but failed to warn swimmers on this occasion of the riptide condition. Plaintiffs—children of the victim—alleged their mother assumed the area was safe for public swimming because there were no posted warning signs or protection services. This court held section 831.2 inapplicable because the plaintiffs alleged a hybrid dangerous condi-

---

[1]All statutory references are to the Government Code unless otherwise specified.

tion, partly natural and partly artificial, proximately caused their mother's death. (*Id.* at pp. 885-886.) The condition resulted from a combination of a natural riptide and the city's conduct in providing lifeguard services. By voluntarily providing lifeguard services, the city induced the public to *rely* on those services. It then negligently failed to warn of a known dangerous natural condition. (*Ibid.*)

In *McCauley* v. *City of San Diego* (1987) 190 Cal.App.3d 981 [235 Cal.Rptr. 732], however, we refused to apply *Gonzales* where the protective services consisted of a signage program. In that case the plaintiff was injured after falling from a cliff above a city beach. He argued the city was liable because it had posted inadequate warning signs. The plaintiff alleged the city had assumed "risk management" of the unimproved property, and therefore created a duty to warn of the dangers posed by the cliffs. (*Id.* at p. 988.)

*McCauley* distinguished *Gonzales* in several ways. Of particular relevance here, the protective services voluntarily assumed by the city in *Gonzales* were active and reasonably induced public reliance. By contrast, signs are passive and are designed "simply to warn people to take care if they assume the risk in using the unimproved public property in its natural condition." (*McCauley*, *supra*, 190 Cal.App.3d at p. 988.) *McCauley* also stressed it was reasonable for the public to rely on the lifeguard service to warn against riptide conditions which are latent to most unknowing swimmers. On the other hand, a cliff is openly dangerous to all.

The same facts which distinguish *McCauley* from *Gonzales* are present here. The city never assumed an active role in risk management. It simply placed warning signs in an area where injuries had occurred. The mere placement of signs in a dangerous area does not reasonably induce the public to believe all other areas are safe. (*Morin* v. *County of Los Angeles* (1989) 215 Cal.App.3d 184, 194 [263 Cal.Rptr. 479].) This is especially true where the danger is obvious, such as jumping off a rock into shallow water. Moreover, unlike the plaintiffs in *Gonzales*, Valenzuela does not even allege the warning signs a quarter of a mile south of his accident induced his decision to dive. There is no evidence to suggest he read these signs, much less relied upon them. Accordingly, we conclude the court properly entered summary judgment in favor of the city based on section 831.2.

*Hazardous Recreational Activity Immunity*

Even if section 831.2 were inapplicable, the city was still shielded from liability under section 831.7. Subdivision (a) of that section provides public entity immunity where injuries occur during "hazardous recreational

activity." "Hazardous recreational activity" is defined in subdivision (b)(2) as "[a]ny form of diving into water from other than a diving board or diving platform, or at any place or from any structure where diving is prohibited and reasonable warning has been given."

Section 831.7, subdivision (c)(1), however, provides an exception to the general section 831.7 immunity. Valenzuela contends this exception is applicable here. Section 831.7, subdivision (c)(1) states: "(c) Notwithstanding the provisions of subdivision (a), this section does not limit liability *which would otherwise exist* for any of the following: (1) Failure of the public entity or employee to guard or warn of a known dangerous condition or of another hazardous recreational activity known to the public entity or employee that is *not reasonably assumed by the participant as inherently a part of the hazardous recreational activity out of which the damage or injury arose.*" (Italics supplied.)

This exception is inapplicable because it only destroys immunity where the causal factor was "not reasonably assumed . . . as inherently a part of the hazardous recreational activity out of which the damage or injury arose." The inherent risk of diving from a rock into shallow water is hitting one's head. Here Valenzuela reasonably assumed this inherent risk. He dove from this rock twice on the day before the accident, and twice on the day of the accident. He knew the water was shallow and purposely dove at an angle in attempt to avoid striking the bottom. Since hitting one's head is reasonably assumed as an inherent risk of diving from a rock into shallow water, section 831.7, subdivision (c)(1) does not apply.[2]

Valenzuela further contends section 831.7, subdivision (b)(2) renders the immunity created by subdivision (a) inapplicable here. Subdivision (b)(2) states that hazardous recreational activities include "[a]ny form of diving into water from other than a diving board or diving platform, or at any place or from any structure where diving is prohibited and reasonable warning thereof has been given." (Italics supplied.) Valenzuela contends since diving was not prohibited and no warning was provided, his dive did not constitute a "hazardous dangerous activity," therefore, section 831.7 immunity is inapplicable. This argument was made and rejected in *Rombalski* v. *City of Laguna Beach* (1989) 213 Cal.App.3d 842 [261 Cal.Rptr. 820]. The *Rombalski* court held section 831.7, subdivision (b)(2) is disjunctive and differentiates diving from diving boards and platforms from diving from anywhere else. The statute clearly defines diving from other than a diving board or

---

[2]In addition, the exception only applies where "liability . . . would otherwise exist." (§ 831.7, subd. (c)(1).) Since section 831.2 applies, liability does not otherwise exist. (*Morin* v. *County of Los Angeles, supra*, 215 Cal.App.3d 184, 195.)

platform (which would include a rock) as a "hazardous recreational activity." (*Id.* at p. 851.)

In sum, both sections 831.2 and 831.7 protect the city from liability for Valenzuela's tragic accident. Public policy considerations support this conclusion. It is undisputed, the city can avoid all liability by simply not posting any warning signs. The city should not be liable for voluntarily attempting to promote safety in circumstances where it has not increased the danger associated with the natural condition. (*McCauley, supra,* 190 Cal.App.3d at p. 991.) Public entities should be encouraged to warn of known dangerous conditions. To strip away immunity and encourage silence would indeed be counterproductive.

DISPOSITION

Judgment affirmed.

Kremer, P. J., and Work, J., concurred.