[No. B075087. Second Dist., Div. Two. Aug. 30, 1994.]

JAIME PEREZ, a Minor, etc., Plaintiff and Appellant, v.
CITY OF LOS ANGELES, Defendant and Respondent.

**COUNSEL**

William H. Burford and Jaquelynn Pope for Plaintiff and Appellant.

James K. Hahn, City Attorney, Thomas C. Hokinson, Assistant City Attorney, Katherine J. Hamilton and Lisa S. Berger, Deputy City Attorneys, for Defendant and Respondent.

**OPINION**

**BOREN, P. J.**—Plaintiff, Jaime Perez, appeals from an order of dismissal after the trial court sustained without leave to amend the demurrer to his first amended complaint for negligence. We conclude that Perez has failed to state a cause of action because the defendant, the City of Los Angeles (hereinafter, the city), is statutorily immune from suit for injury from the hazardous recreational activity of "tree rope swinging." (Gov. Code, § 831.7, subd. (b).)[1]

FACTS

We view the limited factual allegations in this rather bare-bones complaint as true in accordance with the usual rule governing appellate review following a successful demurrer. (*Moore* v. *Regents of University of California* (1990) 51 Cal.3d 120, 125 [271 Cal.Rptr. 146, 793 P.2d 479, 16 A.L.R.5th

---

[1]All further statutory references are to the Government Code.

903].) On October 13, 1991, Perez, then 12 years old,[2] was at Peck Park in San Pedro when he fell and injured himself while swinging from a rope in a tree. The city knew that young children were attracted by and swung from ropes in trees over rough terrain and high gorges.

## DISCUSSION

### I. *Hazardous Recreational Activities*

■ Section 831.7 provides that a public entity is not liable to "any person who participates in a hazardous recreational activity . . . for any . . . injury . . . arising out of that . . . activity." Specifically listed among the hazardous recreational activities for which public entities have immunity from liability is "tree rope swinging." (§ 831.7, subd. (b)(3).) However, this grant of statutory immunity has several exceptions.

Perez relies on the exception which reads as follows: "[T]his section does not limit liability which would otherwise exist for any of the following: [¶] (1) Failure of the public entity or employee to guard or warn of a known dangerous condition or of another hazardous recreational activity known to the public entity or employee that is not reasonably assumed by the participant as inherently a part of the hazardous recreational activity out of which the damage or injury arose." (§ 831.7, subd. (c)(1).) Both the legislative history of this provision (see *DeVito* v. *State of California* (1988) 202 Cal.App.3d 264, 270-271 [248 Cal.Rptr. 330]) and its plain meaning compel the conclusion that a city (or other public entity) is immune from liability for an injury which results from a hazardous activity specified in section 831.7 (e.g., "tree rope swinging") unless the injury was suffered at least in part because the city (or other entity) failed to warn or guard against some additional "dangerous condition" (or separate hazardous recreational activity) for which no immunity is specified and which is not "an inherent part" (*id.* at p. 272) of the risk presented generally by the specified hazardous activity.

Thus, for example, as noted in *DeVito*'s discussion of the legislative history of section 831.7, a person safely engaging in a hazardous recreational activity, but injured by another person engaged in a hazardous activity, is not necessarily precluded from suing the public entity. (*DeVito* v. *State of California, supra,* 202 Cal.App.3d at p. 271.) More to the point in the present case is the possibility of a public entity's failure to warn of an additional known "dangerous condition" (§ 831.7, subd. (c)(1)), the phrase focused

---

[2]We have granted Perez's request to augment the record to include the petition for appointment of guardian ad litem which reveals Perez's age.

upon by Perez. The following examples illustrate our understanding of the proper application of the phrase. Falling from a rope down the slope of a hill or a ravine would classically be "assumed by the participant as an inherent part of the activity of 'tree rope swinging.' (§ 831.7, subd. (b)(3).)" (202 Cal.App.3d at p. 272.) However, if a person were to swing from a rope and jump into a body of water where, to the rope swinger's surprise, there were, for example, dangerous piranhas or crocodiles whose presence was known by the public entity, liability could be premised on the public entity's failure "to guard or warn of a known dangerous condition" (§ 831.7, subd. (c)(1)), i.e., the dangerous fish or reptiles, despite the legal characterization of tree rope swinging as a hazardous recreational activity. In the instant case, there is no *additional* "dangerous condition."

Accordingly, Perez's characterization of the rope hanging from the tree as constituting a "known dangerous condition" (§ 831.7, subd. (c)(1)), about which the city had a duty to guard or warn is unavailing. ██ Section 830, subdivision (a) defines "dangerous condition" to mean "a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used." A condition is not dangerous within the meaning of section 830, subdivision (a) "unless it creates a hazard to those who foreseeably will use the property . . . with due care. Thus, even though it is foreseeable that persons may use public property without due care, a public entity may not be held liable for failing to take precautions to protect such persons." (Cal. Law Revision Com. com., Deering's Ann. Gov. Code, § 830 (1963 ed.) p. 849.) "Any property can be dangerous if used in a sufficiently abnormal manner; a public entity is required only to make its property safe for reasonably foreseeable careful use. [Citation.]" (*Mathews* v. *City of Cerritos* (1992) 2 Cal.App.4th 1380, 1384 [4 Cal.Rptr.2d 16].)

II. *Inapplicability of Assumption of the Risk Doctrine to Section 831.7*

██ Perez also contends that the exception to the grant of immunity permitting liability where there is a failure to warn, which applies when the public entity has knowledge of a dangerous condition not reasonably assumed by the participant (§ 831.7, subd. (c)(1)), must be analyzed differently in the context of a minor who may be unaware of the risks of a hazardous activity. According to Perez, whether there is a duty in the present case depends upon whether he reasonably assumed the risk, and it is a question of fact whether he, as a juvenile, reasonably assumed the risk of tree rope swinging. He thus asserts that his age must be taken into consideration in

determining whether or not he personally assumed the risk of this hazardous recreational activity.

Perez reasons that since the city had knowledge that young children were engaging in the hazardous activity of rope swinging, the city should have taken steps to prevent rope swinging by children because "what would have been perceived by an adult as the obvious inherent dangers of the activity, might not have been so evident to a child." Perez thus urges that the facts as pleaded gave rise to issues regarding his capacity as a juvenile to assume the reasonable risks of the rope swinging activity.

However, Perez's analysis of the doctrine of the assumption of risk—with the related requirement that the participant in the activity have actual knowledge of the risk through experience, observation or warning—is inapplicable to the affirmative defense of statutory governmental immunity. There is simply no support for the unfounded assertion that the statutory immunity in section 831.7 is somehow a codification of the assumption of the risk doctrine and its various requirements. (See *Yarber* v. *Oakland Unified School Dist.* (1992) 4 Cal.App.4th 1516, 1520-1521 [6 Cal.Rptr.2d 437] [school's immunity founded on plaintiff's hazardous recreational activity and analysis of assumption of the risk thus "unnecessary"].) As the court observed in *Brown* v. *Poway Unified School Dist.* (1993) 4 Cal.4th 820, 829 [15 Cal.Rptr.2d 679, 843 P.2d 624], holding the doctrine of res ipsa loquitur unavailable to plaintiffs suing a public entity: " '[T]he intent of the [Tort Claims Act] is not to expand the rights of plaintiffs in suits against governmental entities, but to confine potential governmental liability to rigidly delineated circumstances: immunity is waived only if the various requirements of the act are satisfied.' "

In *DeVito* v. *State of California, supra,* 202 Cal.App.3d 264, a factual situation similar to that in the present case, the adult plaintiff expressly alleged that she was unaware of the dangers from swinging on a hose from a tree over a ledge. (*Id.* at p. 267.) As in the present case, the plaintiff in *DeVito* also alleged that defendant had knowledge of the use of ropes and other items for swinging and therefore had a duty to warn of this "known dangerous condition" pursuant to section 831.7, subdivision (c)(1). (202 Cal.App.3d at pp. 271, 272.) The court in *DeVito* concluded that the statutory immunity applied in all cases of hazardous recreational activities unless the known dangerous condition is not reasonably assumed by the participant as inherently a part of the activity, and found that ". . . the danger that a person who swings on [a rope] might fall down the slope is assumed by the participant as an inherent part of the activity of 'tree rope swinging.' " (*Id.* at p. 272.) Contrary to Perez's assertion, the age of the plaintiff was not

determinative in *DeVito*. Even if in the present case Perez had alleged a lack of knowledge of the dangers of the activity in question, as had the plaintiff in *DeVito*, the immunity in section 831.7 would still apply.

Perez's reliance on *Valenzuela* v. *City of San Diego* (1991) 234 Cal.App.3d 258 [286 Cal.Rptr. 1] is also misplaced. In *Valenzuela*, the court found the immunity exception in section 831.7, subdivision (c)(1) inapplicable to a 17-year-old plaintiff because "hitting one's head is reasonably assumed as an inherent risk of diving from a rock into shallow water . . . ." (234 Cal.App.3d at p. 263.) Contrary to Perez's assumption, the holding in *Valenzuela* was not based upon a finding that the plaintiff therein had actual, personal knowledge of the specific dangers inherent in diving off the rock. Rather, although the court noted the facts showing plaintiff's knowledge of the dangers and his attempt to avoid them, the court's ruling was not dependent upon such facts. Although Valenzuela "knew the water was shallow and purposely dove at an angle in [an] attempt to avoid striking the bottom" (*ibid.*), the court's reference to those facts was merely illustrative of the generalized legal conclusion that "[t]he inherent risk of diving from a rock into shallow water is hitting one's head." (*Ibid.*) The facts in *Valenzuela* are thus illustrative and not determinative of the legal conclusion that the danger of hitting one's head when diving from a rock into shallow water is "reasonably assumed by the participant as inherently a part of the hazardous recreational activity out of which the damage or injury arose." (§ 831.7, subd. (c)(1).)

In *Rombalski* v. *City of Laguna Beach* (1989) 213 Cal.App.3d 842 [261 Cal.Rptr. 820], where a 13-year-old boy was injured while diving from a rock into the ocean, although the court referred to the particular manner in which the youth dove into the water, timed his diving with the waves, and thus knowingly assumed the inherent risks of diving from the rock, such facts were again merely illustrative and not determinative of the legal issue. The court concluded, "[A]n inherent risk of diving from a rock is that one may strike one's head when the water is shallow rather than deep." (*Id.* at p. 852.) The opinion in *Rombalski* did not hold or intimate in any manner that if a plaintiff were not aware of this inherent risk, the immunity of section 831.7 would not apply.

Perez also urges that the language of the immunity statute itself requires a determination in each particular case whether there was a reasonable assumption of the risk. On the other hand, the city urges that section 831.7, subdivision (c)(1) establishes an objective standard and that any risk which is "inherent" is within the scope of the statutory immunity. The analysis in *Mathews* v. *City of Cerritos*, *supra*, 2 Cal.App.4th 1380, regarding the

definition of "dangerous condition" (§ 830, subd. (a)), is analogous and instructive. "Reasonably foreseeable use with due care, as an element in defining whether property is in a dangerous condition, refers to use by the public generally, not the contributory negligence of the particular plaintiff who comes before the court; the particular plaintiff's contributory negligence is a matter of defense." (2 Cal.App.4th at p. 1384.)

Similarly, the statutory phrase "a known dangerous condition or . . . another hazardous recreational activity . . . that is not reasonably assumed by the participant as inherently a part of the hazardous recreational activity out of which the damage or injury arose" (§ 831.7, subd. (c)(1)) does not refer to what the particular plaintiff before the court did or did not assume about the nature of the activity or the risk involved. Rather, the statute refers to the reasonable assumption of the public generally (i.e., what a reasonable participant would assume to be inherent in the activity). The use of the word "another" in this subdivision (i.e., "*another* hazardous recreational activity" [italics added]) of the statute establishes that the Legislature's aim was to withhold immunity if the public entity failed to warn or guard against a dangerous condition or hazardous activity that was not an inherent part of the activity specified in the statute. Thus, in determining whether a public entity is entitled to statutory immunity, a plaintiff's knowledge of any particular risks is irrelevant.

Moreover, traditional rules of statutory interpretation also require the application of an objective standard in interpreting the phrase "reasonably assumed." (§ 831.7, subd. (c)(1).) It is well settled that a phrase used in one place and omitted in another should not be inferred where it has been excluded (*People* v. *Woodhead* (1987) 43 Cal.3d 1002, 1010 [239 Cal.Rptr. 656, 741 P.2d 154]), and that courts avoid construing a statute in a manner which renders some words surplusage (*People* v. *Gilbert* (1969) 1 Cal.3d 475, 480 [82 Cal.Rptr. 724, 462 P.2d 580]). Perez's contention that the statutory exception to the immunity provision requires a participant in a hazardous recreational activity to have actual knowledge of the particular danger for the immunity statute to apply, would render meaningless the language in section 831.7, subdivision (a). That provision expressly permits immunity for a public entity as to injury of a spectator "who knew or reasonably should have known that the hazardous recreational activity created a substantial risk of injury *to himself or herself* and was voluntarily in the place of risk." (§ 831.7, subd. (a), italics added.) The Legislature thus explicitly imposed a standard of personal knowledge of the risk of injury as to spectators, but omitted similar language in another section of the same statute which eliminates a public entity's immunity under certain circumstances as to an injured participant. Accordingly, the phrase "reasonably

assumed," as used in section 831.7, subdivision (c)(1), must be analyzed by an objective and not a personal standard.

Nonetheless, the use of an objective standard to determine the reasonable assumption of the public generally, meaning the risk of injury a reasonable participant would assume as inherent, includes an assessment of the activity to the extent that minors are likely participants. As observed in *Mathews* v. *City of Cerritos*, *supra*, 2 Cal.App.4th 1380, "[t]he statutory definition of reasonably foreseeable persons using the property with due care takes into consideration the lower standard of care which is expected of children. [Citations.]" (*Id.* at p. 1385.)

### III. *No Triable Issue of Fact as to Statutory Immunity*

■ Applying these principles here, we conclude that allowing ropes to be tied to trees does not create a substantial risk of injury to those, even children, using due care in a reasonably foreseeable manner. The added height off the ground when swinging and the possibility of falling from such a height are obvious, even to children. Indeed, an aspect of the excitement and allure of tree rope swinging, as with many hazardous recreational activities (e.g., bungee jumping, skydiving), is the enhanced height and potential danger. Accordingly, allowing ropes to be tied to trees does not create a dangerous condition of the property about which there is a duty to warn or guard against, within the meaning of the exception to immunity in section 831.7, subdivision (c)(1). Perez's complaint thus reveals the city's immunity as a matter of law for liability from injury during the hazardous recreational activity of tree rope swinging. (§ 831.7, subds. (a), (b)(3).)

" 'While it is common knowledge that children often heedlessly engage in games or activities which are dangerous or harmful to their health, at some point the obligation of the public entity to answer for the malfeasance or misfeasance of others, whether children or parents, reaches its outer limits.' [Citation.]" (*Mathews* v. *City of Cerritos*, *supra*, 2 Cal.App.4th at p. 1385.) If the Legislature had not intended to shield public entities from liability claims arising from hazardous recreational activities, granting only limited rights to sue in certain narrow circumstances, public entities would no doubt severely restrict the access to and use of public lands. (See *DeVito* v. *State of California*, *supra*, 202 Cal.App.3d at p. 271; *Kuykendall* v. *State of California* (1986) 178 Cal.App.3d 563, 567, fn. 2 [223 Cal.Rptr. 763].) The broad legislative grant of immunity to public entities is an appropriate price to pay for the extensive and enjoyable, though often inherently hazardous, recreational use of the myriad of so readily accessible public lands.

## DISPOSITION

The order under review is affirmed.

Gates, J., and Nott, J., concurred.