[No. A052740. First Dist., Div. Five. Mar. 31, 1992.]

ANTHONY YARBER, Plaintiff and Respondent, v.
OAKLAND UNIFIED SCHOOL DISTRICT, Defendant and Appellant.

**COUNSEL**

Dan Siegel and Tanya Russell for Defendant and Appellant.

Arthur L. Pretzer and Benjamin Warwick for Plaintiff and Respondent.

OPINION

**ROUSE, J.**\*—In this case we hold that plaintiff engaged in a "hazardous recreational activity" when he injured himself playing basketball in a junior high school gymnasium, and defendant school district is immune from liability under Government Code section 831.7. We find it unnecessary to discuss the issue of assumption of risk raised by defendant. The judgment for plaintiff is reversed, and the trial court is directed to enter judgment for defendant school district.

I

The facts are undisputed. Anthony Yarber was injured while playing in an adult basketball game, after school hours, at the Havenscourt Junior High School gymnasium on November 18, 1985. The junior high school is part of the Oakland Unified School District.[1] Yarber and the other players had rented the gymnasium for $30 from defendant school district for this and other games. Yarber had played basketball in community basketball leagues from 1976 to 1985. He had played basketball at this particular gym previously. None of the games were sanctioned or supervised by defendant school district. No referees controlled the game.

During the game on November 18, Yarber was hit in the act of shooting. The impact propelled him into the unpadded concrete wall, located four feet beyond the line. Yarber was aware that the wall adjacent to the end court line was unpadded. It is unclear whether he was rendered unconscious before or after colliding with the wall. He sustained a concussion, a head injury and a temporary cervical spinal injury. Plaintiff was hospitalized after the accident and incurred $5,833.37 in hospital bills and $4,600 in lost wages.

An arbitrator awarded plaintiff $35,433.37. The school district filed a de novo appeal, and in a court trial plaintiff was awarded $14,000 ($29,000 less a setoff of $15,000 from the City of Oakland). The trial court refused to reduce the judgment based on defenses of assumption of risk or comparative negligence. No statement of decision was requested and none was prepared. But in a minute order the court also decided that Government Code section 831.7 (hereafter section 831.7) did not limit defendant's liability since the risk which caused plaintiff's injuries were not "inherently part of the game of basketball."

---

\*Retired Associate Justice of the Court of Appeal, First District, sitting under assignment by the Chairperson of the Judicial Council.

[1]Codefendant City of Oakland settled its liability with plaintiff and is not a party to this appeal.

## II

■ Ordinarily, a school district is liable for injuries caused by the dangerous condition of its property. (Gov. Code, § 835; see generally, *Peterson* v. *San Francisco Community College Dist.* (1984) 36 Cal.3d 799, 809 [205 Cal.Rptr. 842, 685 P.2d 1193].) However, section 831.7 provides immunity from liability where a plaintiff is injured while engaged in certain sporting activities played on school grounds. (Cf. *Bartell* v. *Palos Verdes Peninsula Sch. Dist.* (1978) 83 Cal.App.3d 492, 496-498 [147 Cal.Rptr. 898] [school district is not liable for injuries sustained by minor after school hours in dangerous skateboard game on schoolyard absent defect in school property].)

■ Section 831.7 states: "(a) Neither a public entity nor a public employee is liable to any person who participates in a *hazardous recreational activity*, including any person who assists the participant, or to any spectator who knew or reasonably should have known that the hazardous recreational activity created a substantial risk of injury to himself or herself and was voluntarily in the place of risk, or having the ability to do so failed to leave, for any damage or injury to property or persons arising out of that hazardous recreational activity." (Italics added.)

The section defines "recreational hazardous activity" as an activity which "creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury to a participant" and which includes "body contact sports (i.e., sports in which it is reasonably foreseeable that there will be rough bodily contact with one or more participants) . . . ." (§ 831.7, subd. (b)(3).)

■ Where, as here, the facts are undisputed, the issue whether plaintiff was engaged in a "recreational hazardous activity" is a question of law for this court. (See *Gibbons & Reed Co.* v. *Dept. of Motor Vehicles* (1963) 220 Cal.App.2d 277, 286 [33 Cal.Rptr. 688] [determination whether an enormous dump truck is "self-propelled earth moving equipment," which is exempt from registration fees, is a question of law]; also 9 Witkin, Cal. Procedure (3d ed. 1985) Appeal, § 290, p. 302.) ■ The only reasonable inference to be drawn from these facts is that playing basketball in a full-court game includes rough body contact and carries with it the risk of substantial injury as defined by the statute.

It should be obvious to players and spectators alike that the full-court, competitive basketball game, of the kind plaintiff customarily played in, is an intensely physical game fraught with risk of serious injury. Body blocks, charges, fouls, intentional or not, and accidental collisions with other players

are routine and expected. In fact, the rules recognize this and assess penalties for fouls against one's opponent. Since none of the players wear any protection, such bodily contact takes a physical toll which routinely leads to cuts, bruises and other more serious injuries.

Having said this, we also conclude that the risk of injury is not confined to the boundaries of the court. The risk inherent in the game extends beyond those lines and involves common occurrences, as when a player is shoved out of bounds, or his momentum when diving for the ball or driving to the basket propels him past the base line. An interested person need only turn on one of the week's many televised basketball games to see players falling, running or being pushed out of bounds onto reporters' tables, television cameras or fans seated near the court. Running into obstacles close to the sidelines must be considered an inherent risk of the game. The danger of an unpadded concrete wall, four feet beyond the boundaries, should have been apparent to anyone playing a full-court game of basketball in that gym. This is especially pertinent here since plaintiff testified he had played basketball in that gym previously and knew the wall was unpadded. This wall was not a "hidden trap" created by defendant school district. (See, e.g., *Danieley* v. *Goldmine Ski Associates, Inc.* (1990) 218 Cal.App.3d 111, 120-121 [266 Cal.Rptr. 749] [large tree at edge of ski run was obvious hazard and ski slope operator had no duty to warn skiers or to remove it].)

The game of basketball demands grace, power, speed and endurance. Those of us who are not blessed with such talent watch in complete fascination (and often envy) at these athletes who can run, leap and score while their opponents knock them around the court. The risk of injuries, often serious, is part of the game. The type of basketball played by plaintiff is a "body contact sport" which carries with it a substantial risk of injury as defined in section 831.7.

We conclude, as a matter of law, that the injury sustained here is an inherent risk of the sport, and the school district is statutorily immune from liability for any of plaintiff's injuries which occurred during and because of the basketball game.

### III

In light of our holding, it is unnecessary to address the school district's contention that plaintiff's assumption of risk bars recovery, an issue currently before our Supreme Court in *Ford* v. *Gouin** (Cal.App.); *Harrold* v.

*Rolling J Ranch\** (Cal.App.) review granted May 23, 1990 (S014818) and other cases.[2]

The judgment is reversed and the superior court is directed to enter judgment for defendant school district. Each party to bear their own costs on appeal.

King, Acting, P. J., and Haning, J., concurred.

A petition for a rehearing was denied April 21, 1992.

---

[2]Some of the other cases pending review are: *Cohen* v. *McIntyre\** (Cal.App.) review granted March 14, 1991 (S019527); *Donohue* v. *San Francisco Housing Authority\** (Cal.App.) review granted August 15, 1991 (S021823); *Hacker* v. *City of Glendale\** (Cal.App.) review granted June 20, 1991 (S020643); *Knight* v. *Jewett\** (Cal.App.) review granted February 14, 1991 (S019021); *Krol* v. *Sampson\** (Cal.App.) review granted May 2, 1991 (S020188); *Van Meter* v. *American Motor Sports Assn.\** (Cal.App.) review granted May 2, 1991 (S020270).

---

\*Reporter's Note: See Supreme Court opinions in *Knight* v. *Jewett* (1992) 3 Cal.4th 296 and *Ford* v. *Gouin* (1992) 3 Cal.4th 339. The following causes were remanded to the Court of Appeal on November 30, 1992, for reconsideration in light of *Knight* v. *Jewett*: *Harrold* v. *Rolling J. Ranch, Cohen* v. *McIntyre, Donohue* v. *San Francisco Housing Authority, Hacker* v. *City of Glendale, Krol* v. *Sampson, Van Meter* v. *American Motor Sports Assn.*