[No. B070279. Second Dist., Div. Seven. Jan. 10, 1995.]

ALBERTO ACOSTA, as Co-executor, etc., et al., Plaintiffs and Appellants, v.
LOS ANGELES UNIFIED SCHOOL DISTRICT, Defendant and Appellant.

**COUNSEL**

Hamrick, Garrotto, Briskin & Pene, Katherine B. Pene and Frances K. Prince for Defendant and Appellant.

Sanford M. Gage and Peter I. Bersin for Plaintiffs and Appellants.

## OPINION

**JOHNSON, J.**—Section 831.7 of the Government Code immunizes a public entity from liability for injuries resulting from participation in a "hazardous recreational activity." The issue before us is whether this immunity applies in a suit against a school district by a high school gymnast seriously injured while practicing under the supervision of his coach in the school gymnasium after school, during the off-season. We hold the immunity does not apply under these circumstances.

### FACTS AND PROCEEDINGS BELOW

Omar Acosta was a member of the Hamilton High School gymnastics team. One night during the off-season, Omar was working out in the Hamilton gym under the supervision of assistant gymnastics coach Louis Thomas. He was practicing a new maneuver on the high bar called the front catch in which the gymnast swings forward and, at the top of his arc, lets go of the bar, performs a somersault and catches the bar on the way down. While practicing this maneuver Omar missed catching the bar, fell and landed on his neck. He was rendered quadriplegic.[1] By special verdict, a jury found coach Thomas was negligent in supervising Omar's practice and this negligence was a substantial factor in bringing about Omar's injury. The jury found Omar did not assume the risk of his injury. However, the jury's special verdict also found at the time of the accident Omar was engaged in a "hazardous recreational activity" and Coach Thomas was not grossly negligent in causing Omar's injury. Therefore, in accordance with the special verdict, the trial court rendered judgment for the Los Angeles Unified School District (district).

Following entry of judgment, Omar filed motions for a new trial, judgment notwithstanding the verdict and to vacate the judgment and enter a different judgment. These motions rested on two arguments. First, the undisputed facts showed Omar was injured in the course of a school sponsored and supervised activity which, as a matter of law, is not a "recreational" activity within the meaning of Government section 831.7.[2] Second, to the extent there was an issue of fact whether Omar was engaged in a "recreational" activity, the trial court erred in not instructing the jury on the meaning of the term "recreational" in the context of section 831.7 and in not requiring the jury to determine as part of its special verdict whether Omar's gymnastics practice was "recreational" in nature.

---

[1] Omar Acosta died during the pendency of this appeal. His estate substituted into the action as plaintiff.

[2] Unless otherwise indicated, all future references are to the Government Code.

The trial court disagreed with the argument section 831.7 is inapplicable to this case as a matter of law. The court agreed, however, a distinction exists between a "recreational" activity and what the court termed a "school directed" activity and that it had failed to properly instruct the jury on this distinction. Based on this ruling the court granted a new trial limited to determining whether Omar's injury resulted from a "school-directed" activity and, if so, Omar's comparative negligence, the amount of damages and apportionment of liability. As to the motions for judgment notwithstanding the verdict and to vacate the judgment, the court ordered judgment be entered consistent with the jury's special verdict as to negligence.

The district appealed from the orders described above. Plaintiff filed a protective cross-appeal from the judgment and appealed from the orders made after judgment to the extent they denied his request for a judgment of liability against the school district.

## DISCUSSION

I.  *Plaintiff, Participating in a School-sponsored Athletic Practice Under the Supervision of School Personnel After Hours During the Off-season, Was Not Engaged in a "Hazardous Recreational Activity" Within the Meaning of Section 831.7.*

Section 831.7 provides in relevant part:

"(a) Neither a public entity nor a public employee is liable to any person who participates in a hazardous recreational activity . . . .

"(b) As used in this section, 'hazardous recreational activity' means any recreational activity conducted on property of a public entity which creates a substantial (as distinguished from a minor, trivial, or insignificant) risk of injury to a participant or a spectator. . . . .

". . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(c) Notwithstanding the provisions of subdivision (a), this section does not limit liability which would otherwise exist for any of the following:

". . . . . . . . . . . . . . . . . . . . . . . . . . . . .

"(5) An act of gross negligence by a public entity or a public employee which is the proximate cause of the injury."

In some cases the question whether the plaintiff was engaged in a "recreational" activity may be a question of fact for the jury. (Cf. *Domingue*

v. *Presley of Southern California* (1988) 197 Cal.App.3d 1060, 1065 [243 Cal.Rptr. 312] and *Gerkin v. Santa Clara Valley Water Dist.* (1979) 95 Cal.App.3d 1022, 1027 [157 Cal.Rptr. 612] [triable issues of fact whether plaintiffs were using private property for a "recreational purpose" within the meaning of Civ. Code, § 846]. But where, as here, the facts are undisputed, the question whether plaintiff was engaged in a "hazardous recreational activity" is a question of law for the court. (*Yarber v. Oakland Unified School Dist.* (1992) 4 Cal.App.4th 1516, 1519 [6 Cal.Rptr.2d 437] [participation in adult basketball league was "hazardous recreational activity" as a matter of law].) ▮ In the present case the issue of immunity under section 831.7 should never have gone to the jury because, as a matter of law, "hazardous recreational activities" do not include school-sponsored extracurricular athletic activities under the supervision of school personnel.

Plaintiff's initial argument is that section 831.7 was only intended to immunize public entities from liability to recreational users of public property stemming from a dangerous condition on the property. (See *Delta Farms Reclamation Dist.* v. *Superior Court* (1983) 33 Cal.3d 699, 707 [190 Cal.Rptr. 494, 660 P.2d 1168] [holding public entities are not protected by Civ. Code, § 846, which provides property owners generally owe no duty to keep their property safe for recreational use].) Although there is support for this construction in the statute's legislative history, the actual language of section 831.7 is susceptible to broader application. In *Decker* v. *City of Imperial Beach* (1989) 209 Cal.App.3d 349, 355 [257 Cal.Rptr. 356] the court held section 831.7 immunized the city from liability for a negligent attempt to rescue a person engaged in a hazardous recreational activity. We need not decide the outer limits of the immunity created by section 831.7 because it is clear from the language of the statute and its legislative history it was not intended to create a new immunity from liability for the negligent supervision of students engaged in school sponsored and supervised extracurricular activities.

For immunity to apply under section 831.7, the injured party must have been engaged in an activity which was both "hazardous" and "recreational." As previously noted, the statute defines a hazardous recreational activity as "any recreational activity conducted on property of a public entity which creates a substantial (as distinguished from a minor, trivial, or insignificant) risk of injury to a participant or a spectator." (§ 831.7, subd. (b).) The statute specifies certain activities as meeting this definition, including archery, trampolining and "body contact sports (i.e. sports in which it is reasonably

foreseeable that there will be rough bodily contact with one or more participants) . . . ." (§ 831.7, subd. (b)(3).)[3]

If the term "hazardous recreational activity" is interpreted to include school sponsored and supervised activities, schools would be immune from liability for the negligent supervision of students engaged in virtually every extracurricular sport (e.g., football, basketball, baseball, gymnastics, soccer, wrestling), as well as activities which are often part of a school's physical education program such as archery and trampolining. As we explain below, this would constitute a major revision of California law with respect to school district tort liability.

In California it has been "long established that a school district bears a legal duty to exercise reasonable care in supervising students in its charge and may be held liable for injuries proximately caused by the failure to exercise such care." (*Hoyem* v. *Manhattan Beach City Sch. Dist.* (1978) 22 Cal.3d 508, 513 [150 Cal.Rptr. 1, 585 P.2d 851].) Our Supreme Court has declared, "The standard of care imposed upon school personnel in carrying out this duty . . . is that degree of care 'which a person of ordinary prudence, charged with [comparable] duties, would exercise under the same circumstances.' . . . Either a total lack of supervision . . . or ineffective supervision . . . may constitute a lack of ordinary care on the part of those responsible for student supervision. Under section 815.2, subdivision (a) of the Government Code, a school district is vicariously liable for injuries proximately caused by such negligence." (*Dailey* v. *Los Angeles Unified Sch. Dist.* (1970) 2 Cal.3d 741, 747 [87 Cal.Rptr. 376, 470 P.2d 360] [citations and footnote omitted.])

This duty does not evaporate the minute classes are dismissed for the day. As the Supreme Court observed in *Hartzell* v. *Connell* (1984) 35 Cal.3d 899, 909 [201 Cal.Rptr. 601, 679 P.2d 35], "[i]t can no longer be denied that extracurricular activities constitute an integral component of public education. Such activities are ' "generally recognized as a fundamental ingredient of the educational process." ' " The court went on to say " 'school-sponsored activities, such as sports, . . .' though denominated ' "extracurricular," ' . . . nevertheless form an integral and vital part of the educational program.' " (*Id.* at p. 910.) In *McGrath* v. *Burkhard* (1955) 131 Cal.App.2d 367, 376 [280 P.2d 864], the court upheld a school board's assignment of teachers to supervise extracurricular activities, reasoning such supervision is "an important part of [a teacher's] duties" because of the "great importance" of educating students in principles of justice, fair play and good citizenship.

---

[3]Although gymnastics is not specifically mentioned in the statute, we take judicial notice of the fact gymnastics, especially a front catch on the high bar, is a "hazardous" activity as defined by section 831.7, subdivision (b).

■    More specifically, most states, including California, have held a school district's duty of reasonable supervision applies to school-sponsored extracurricular sports programs. (*Leger* v. *Stockton Unified School Dist.* (1988) 202 Cal.App.3d 1448, 1459 [249 Cal.Rptr. 688] [wrestling team practice]; *Leahy* v. *School Bd. of Hernando County* (Fla.Dist.Ct.App. 1984) 450 So. 2d 883, 885 [spring football practice]; *Rutter* v. *Northeastern Beaver Cty., etc.* (1981) 496 Pa. 590 [437 A.2d 1198, 1202] [pre-season football training and practice]; *Carabba* v. *Anacortes School District No. 103* (1967) 72 Wn.2d 939 [435 P.2d 936, 947] [interscholastic wrestling match]; *Vendrell* v. *School District No. 26C, Malheur County* (1962) 233 Ore. 1 [376 P.2d 406, 408] [football game]; and see Annot., Tort Liability of Public Schools [etc.] for Accident Occurring During School Athletic Events (1971) 35 A.L.R.3d 725, 734-735.)

A court will not conclude the Legislature "intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication." (*County of Los Angeles* v. *Frisbie* (1942) 19 Cal.2d 634, 644 [122 P.2d 526].) Nowhere in section 831.7 or its legislative history is there an express declaration the Legislature intended to immunize school districts from liability resulting from negligent supervision of extracurricular activities in general or athletics in particular. Nor is such immunity conferred by necessary implication. Under section 831.7 a school district would not be liable for purely "recreational" activities which happen to be conducted on school property. (*Yarber* v. *Oakland Unified School Dist.*, *supra*, 4 Cal.App.4th at p. 1519 [school district immune from liability under § 831.7 for injury to player in adult community basketball league using gym after school hours].) However, we believe a clear distinction exists between allowing the public to use school facilities after hours, on weekends or during vacations and school-sponsored athletic practices under the supervision of school personnel after school or during the off-season. The Legislature itself has recognized the existence of "school-sponsored interscholastic athletic programs" and that these programs often occur after regular school hours.[4] Furthermore, an activity is not "recreational" merely because it is voluntary. Participation in all interscholastic athletics is "voluntary."[5]

The district strenuously argues the activity in which Omar was injured was not a school-sponsored gymnastics team practice. Rather, it was part of

---

[4] Education Code section 51242 provides, "[A] school district may exempt any four-year or senior high school pupil from attending courses of physical education, if the pupil is engaged in a regular school-sponsored interscholastic athletic program carried on wholly or partially after regular hours."

[5] Coach Thomas testified that although there was no "requirement" members of the gymnastics team practice in the summer or the off-season, "[i]f you want to get better, you need

a community recreation program open to everyone. While it is true Hamilton High School alumni and members of the community would sometimes appear at the evening gymnastics practices, the evidence showed Coach Thomas ran structured training and drills for members of the gymnastics team. Thomas testified when he was overseeing these gymnastics practices he was carrying out essentially the same kind of duties the head coach carried out when he was running the practices. Omar had been a member of the Hamilton High School gymnastics team for the past two years and intended to compete in the coming season. At the end of the previous season Omar and the head gymnastics coach discussed the maneuvers Omar would work on during the off-season, including the front catch. On the night of the accident, Omar was practicing in the Hamilton High School gym on equipment provided by the school under the supervision of a Hamilton gymnastics coach who testified it was he who suggested Omar learn the front catch maneuver. The evidence leaves no doubt Omar was engaged in a school sponsored and supervised activity at the time of his injury.[6]

For the reasons set forth above, the immunity provided by section 831.7 is not applicable to this case. The trial court should have granted plaintiff's motion for judgment notwithstanding the verdict as to liability and ordered a new trial on damages, including plaintiff's comparative negligence if any, and apportionment of liability.[7]

---

to spend time in the gym. . . . [I]t's something you have to do year-round. You have to keep practicing. You have to keep doing it. There is no down time."

We also note other states imposing a duty to supervise interscholastic athletics have not differentiated between practices held during the season and practices held off-season. (See, e.g., *Leahy* v. *School Bd. of Hernando County, supra,* 450 So.2d 883 and *Rutter* v. *Northeastern Beaver Cty., etc., supra,* 437 A.2d 1198 [both involving preseason training and practice].)

[6]Although the dissent contends a factual dispute exists as to whether Omar's activities were school-sponsored it fails to identify any fact which is in dispute. None of the facts cited by the dissent were controverted at trial nor were any of the facts on which we have relied. The dissent may be suggesting it should be left to the jury to draw an inference from the facts as to whether Omar's activities were school sponsored. However, as held in *Yarber, supra,* where there is only one reasonable inference to be drawn from the facts the issue of immunity under section 831.7 is a question of law for this court. (4 Cal.App.4th at p. 1519.) The undisputed facts in this case lead to the inescapable conclusion Omar was participating in a school-sponsored activity.

[7]The trial court's order under Code of Civil Procedure section 663 vacating the judgment and entering a different judgment must be reversed on procedural grounds. This statute provides a remedy when the trial court draws an incorrect legal conclusion or renders an erroneous judgment upon the facts as found by the court or as found by the jury in a special verdict. (Code Civ. Proc. § 663, subds. 1, 2; *Jones* v. *Clover* (1937) 24 Cal.App.2d 210, 211 [74 P.2d 517].) Thus, where the jury has returned a special verdict a motion may be made to correct "[a] judgment or decree not consistent with or not supported by the special verdict." (Code Civ. Proc. § 663, subd. 2.) Here, however, the trial court's judgment for defendant was

## II.  *The School District Has Waived Any Errors Pertaining to the Issue of Negligence.*

One issue remains. The district contends certain errors occurred at trial affecting the jury's finding of negligence but the trial court precluded the district from presenting argument on these errors following trial.

The record does not support this contention. The district filed written opposition to plaintiff's posttrial motions and orally argued against the motions at the hearing. At no time in the course of these proceedings did the district raise any errors affecting the jury's finding of negligence. It was only after the trial court announced its ruling on plaintiff's motions that the district, for the first time, raised unspecified "errors in law" with respect to the finding of negligence and requested "an opportunity to address those issues." The trial court denied the request as untimely and pointed out the district could raise these alleged errors of law on the appeal.

The trial court's ruling was correct. It was far too late for the district to raise errors of law for the first time at oral argument on plaintiff's motions, especially since the court's jurisdiction to rule on the new trial motion was about to expire. (Cf. *Pelletier* v. *Eisenberg* (1986) 177 Cal.App.3d 558, 562-563 [223 Cal.Rptr. 84].) The district could have raised these errors on appeal but did not do so. Thus, we deem the errors waived.

### DISPOSITION

The order granting judgment notwithstanding the verdict is reversed and the trial court is directed to enter a new and different order granting judgment notwithstanding the verdict in favor of plaintiff and against defendant on the issue of liability. The order granting a new trial is modified to provide the new trial shall be limited to plaintiff's comparative negligence, the amount of damages and apportionment of liability and is affirmed as modified. The order vacating the judgment and entering a different judgment is reversed. Plaintiff is awarded costs on appeal.

Lillie, P. J., concurred.

**WOODS (Fred), J.,** Dissenting.—It is comprehendible how the tragic but "freak" accident in this instance has led the majority to stretch to conclude as a matter of law that Government Code section 831.7 yields no liability

consistent with and fully supported by the jury's special verdict which found plaintiff was engaged in a hazardous recreational activity at the time of the accident. The special verdict itself cannot be attacked under Code of Civil Procedure section 663. (See *Knapp* v. *City of Newport Beach* (1960) 186 Cal.App.2d 669, 682 [9 Cal.Rptr. 90].) Instead, the remedy is a motion for new trial. (*Ibid.*)

immunity to the school district in this case. Most certainly, resultant quadriplegia and eventual death to this young high school gymnast would evoke sympathy in anyone but the completely insensitive. Remembering, however, the seasoned precaution that "hard facts make bad law," I am constrained to observe that the interpretation given to Government Code section 831.7 by the majority, depriving the school district of liability immunity as a matter of law, in this case of first impression, is oversimplified, does not fully "track" the facts of this case, and erroneously deprives the school district of a trial on the factual dispute of whether the activities of the plaintiff were *school sponsored.*

In my view, the reasoning of the trial judge in granting a motion for new trial limited, among other specifically defined issues, to a determination of whether the plaintiff's activities were school sponsored[1] is sound. The trial judge recognized a dichotomy which is seriously underplayed in the majority opinion, i.e., whether the activity was "hazardous and recreational" on the one hand, giving rise to Government Code section 831.7 liability immunity or "school sponsored" on the other hand, resulting in no liability immunity.

The trial judge in ordering a limited new trial, recognized that he had failed to adequately instruct the jury by omitting instructions on the critical question of whether plaintiff's activities were school sponsored. I agree with the trial judge that such omissions was error.

The following facts gleaned from the record and considered in conjunction with the factual statement contained in the majority opinion lend merit to the ruling of the trial judge:

The Los Angeles Unified School District, and in particular, Hamilton High School, since 1988 has opened its campus to the community for recreational purposes after school hours, not on a volunteer basis, but in accordance with the mandates of Education Code sections 10900 through 10914.5.

The gymnasium in question was also opened to the community, but only if a qualified person was there to oversee its use.

No fee was charged for the use of the gymnasium.

The injury occurred in the evening.

---

[1]The trial judge used the term "directed" instead of the term "sponsored." The term "sponsored" is more appropriate since that is the term used by the California Supreme Court in *Hartzell* v. *Connell* (1984) 35 Cal.3d 899 [201 Cal.Rptr.601, 679 P.2d 35], as cited in the majority opinion.

The injury occurred during the off-season for gymnastics.

The workout was not required.

Other students and general community members were present and using the equipment the evening of the accident.

Acosta, during the off-season, worked out at other places besides defendant's school.

Students who wanted to improve their gymnastics skills usually worked out during the off-season.

Lewis Thomas, a firefighter and experienced gymnast, volunteered his time to work out with individuals interested in gymnastics.

Lewis Thomas volunteered his time at Hamilton High School and other locations.

Lewis Thomas had been requested to volunteer his time by one David Lertzman, one of the coaches at Hamilton High School.

Lewis Thomas was present at the time of the incident.

It is my opinion that the above facts give rise to a factual dispute which requires resolution by the trier of fact, and it is error for the majority to decide the issue as one of pure law.

I do not take issue with the reasoning of the majority that Government Code section 831.7 does not result in immunity to an entity for school-sponsored "extra-curricular" activities. The decisions cited by the majority are sound and compelling. I depart from the majority opinion in its result of deciding the appeal as a matter of law when confronted with facts evoking profound sympathy. This case is not a case to be decided as a matter of law, but a case, as the trial judge wisely discerned, to be decided by the jury as the trier of fact once proper instructions are given.

Accordingly, I would affirm the judgment of the trial court in its entirety.

A petition for a rehearing was denied February 2, 1995. Woods, J., was of the opinion that the petition should be granted. The petition of appellant Los Angeles Unified School District for review by the Supreme Court was denied April 13, 1995. Lucas C. J., and Mosk, J., were of the opinion that the petition should be granted.