Filed 6/1/26  Nampeera v. CMG Mortgage CA1/4
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JACQUELINE NAMPEERA et al., Plaintiffs and Respondents, v. CMG MORTGAGE, INC., Defendant and Appellant. | A170936 (Contra Costa County Super. Ct. No. C23-02918) |

Defendant and appellant, CMG Mortgage, Inc. (CMG), appeals from an order denying its motion to compel arbitration of the wage-and-hour class action filed by its employees, plaintiffs and respondents, Jacqueline Nampeera and Donna Prevost.  The trial court denied the petition, finding CMP did not meet its burden of proving the parties had an agreement to arbitrate the controversy.  (Code Civ. Proc., § 1281.2).[1]  The court determined CMG did not present sufficient evidence to support a finding that the electronic signatures on its proffered April 2, 2021 arbitration agreement (the 2021 agreement) were " 'the act[s] of' " Nampeera and Prevost as required by Civil Code section 1633.9.  We affirm.

---

[1] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

# I.

# BACKGROUND

In November 2023, plaintiffs filed a class action against CMG, alleging CMG failed to pay its hourly-paid and/or non-exempt employees overtime for hours worked and failed to provide meal and rest breaks. The complaint also alleges various labor code violations and unfair business practices, and seeks civil penalties pursuant to the Labor Code Private Attorneys General Act of 2004 (PAGA). (Lab. Code, § 2698 et seq.)

In January 2024, CMG moved for an order compelling arbitration of plaintiffs' claims in their individual and representative capacities based on the 2021 agreement. In support of its motion, CMG presented the agreements purportedly signed by Nampeera and Prevost in 2021. CMG also presented two declarations from its chief human resources officer, Melissa Harbourne.[2] Harbourne stated that on April 1, 2021, she sent an email (April 1 email) to all CMG employees notifying them of an updated arbitration agreement and the timing to return the agreement. The subject line of the April 1 email referred to "Updated Employee Handbook and other HR Documents." The email, which was addressed to "Team," stated: "In the coming days, you will receive the updated Employee Handbook, Acknowledgments (Confidentiality, Harassment, Discrimination and Retaliation Prevention Acknowledgement), Arbitration Agreement, Safe Act Policy and the Injury and Illness Prevention Program via DocuSign. Please review and sign these documents no later than April 26, 2021." (Orig. underlining omitted.)

---

[2] Harbourne's first declaration was submitted with the motion to compel. Her second declaration was submitted with the reply. The reply declaration contained new facts for which the court permitted supplemental briefing.

Harbourne summarily asserted that plaintiffs signed their respective agreements "via DocuSign" on April 2, 2021. Harbourne explained that, because DocuSign generates a unique Envelope ID once the electronic signature has been completed, it is reasonable to conclude that Nampeera and Prevost electronically signed and returned the document with their respective Envelope IDs, and that Nampeera and Prevost electronically added their signatures to the agreements prior to DocuSign sending them back to CMG, as is the protocol for all electronically-executed agreements issued by CMG via DocuSign. Harbourne did not explain how CMG verified that the DocuSign documents were accessed and signed by the intended recipients. CMG made no showing of the efficacy of any security procedure applied to determine the person to which the electronic record or electronic signature was attributable. CMG's evidence did not include the emails purportedly sent to the plaintiffs in follow up to the April 1 email.

In opposition, plaintiffs each asserted they neither received nor signed the 2021 arbitration agreement. Both plaintiffs further averred that when they were hired, CMG's "IT Department" created their work emails and they personally did not set up the passwords associated with the emails. Each attested: "to my knowledge the IT Department and my supervisors could access my work email account."

Specifically, Nampeera declared: "To the best of my recollection, the email I received did not mention an arbitration agreement . . .[¶] To the best of my knowledge, I did not electronically sign this document." Nampeera further averred: "To the best of my knowledge, I did not electronically sign a CMG arbitration agreement in 2021 and I never authorized anyone at CMG to sign an arbitration agreement on my behalf."

3

Similarly, Prevost averred: "To the best of my recollection, I did not electronically sign this document or authorize anyone to sign this document on my behalf . . . [¶] To the best of my knowledge, I never received or reviewed CMG's 2021 arbitration agreement while I was working at CMG."

In her reply declaration, Harbourne attached agreements purportedly signed by Prevost on May 22, 2019 (2019 agreement) and by Nampeera on November 24, 2020 (2020 agreement). She also provided for corresponding DocuSign summaries for each agreement, as well as for the 2021 agreement, which included "Certificate[s] of Completion." Harbourne declared that the Certificates of Completion confirmed that Nampeera and Prevost signed the 2021 agreement based on a comparison of their respective Envelope IDs and unique signature codes, which match the signatures on the 2021 agreement.

Neither the 2019 nor the 2020 agreements are mentioned in the motion to compel arbitration. The motion sought to compel arbitration solely on the 2021 arbitration agreement. In its supplemental brief, CMG argued only that the 2019 and 2020 agreements were evidence that plaintiffs signed prior versions of CMG's arbitration agreements, also via DocuSign, in the same manner as they signed their 2021 arbitration agreements.

In a detailed, written order the court denied the petition. The court found CMG met its initial burden by providing a copy of the 2021 arbitration agreement with its motion. However, plaintiffs had, by a preponderance of the evidence, raised a question about the authenticity of the electronic signatures. First, while Harbourne averred that she sent the April 1st email to "all employees," the email itself did not identify which employees were included on the email; nothing in the email itself indicated that the 2021 arbitration agreement was sent to either plaintiff. Second, "and more concerning," CMG had not provided sufficient evidence to counter plaintiffs'

4

contention that other people had access to their email accounts; both plaintiffs averred that their emails and passwords were created by CMG and plaintiffs did not set up their own passwords. Accordingly, the court concluded the burden shifted back to CMG to show the signatures were authentic. Although CMG produced evidence that DocuSign creates a " 'unique Envelope ID' " *after* a signature is placed on the document, CMG did not provide any evidence that each plaintiff " 'was assigned a unique, private username and password such that the only person who could have accessed the . . . portal and signed the agreement.' (*Bannister v. Marinidence Opco, LLC* (2021) 64 Cal.App.5th 541, 545.)" Thus, the court concluded CMG did not carry its burden to show, by a preponderance of the evidence, that plaintiffs' signatures were authentic.

This timely appeal followed.

## II.

## DISCUSSION

CMG contends the court's ruling that CMG failed to prove the existence of the 2021 arbitration agreement is not supported by substantial evidence. In support of this assertion, CMG challenges the adequacy of plaintiffs' respective declarations because they are based on equivocal statements made to the "best" of their "knowledge." CMG further argues plaintiffs forfeited the authenticity issue as to the 2019 and 2020 agreements.

### A. Applicable Law and Standard of Review

State and federal arbitration laws "are grounded in a policy of 'treating arbitration [agreements] like all others,' not one preferring arbitration to litigation." (*Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562, 583, citing *Morgan v. Sundance, Inc.* (2022) 596 U.S. 411, 418.) "Accordingly, in determining whether a party to an arbitration agreement has lost the right

5

to arbitrate by litigating the dispute, a court should treat the arbitration agreement as it would any other contract, without applying any special rules based on a policy favoring arbitration. That is, courts should apply the same procedural rules that they would apply to any other contract." (*Quatch*, at p. 583.) Thus, when presented with a motion to compel arbitration, the trial court's first task is to determine whether an agreement to arbitrate the controversy exists. *(Gorlach v. Sports Club Co.* (2012) 209 Cal.App.4th 1497, 1504–1505*;* § 1281.2 [requiring court to order arbitration "if it determines that an agreement to arbitrate the controversy exists"].)

The party seeking arbitration "bears the burden of proving the existence of a valid arbitration agreement by the preponderance of the evidence," and the trial court decides the issue in a summary proceeding, sitting as the trier of fact, weighing evidence and assessing credibility. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 972.)

When a motion to compel arbitration involves a disputed electronic signature, courts "resolve the dispute using a three-step burden-shifting process."[3] (*Iyere v. Wise Auto Group* (2023) 87 Cal.App.5th 747, 755 (*Iyere*); accord, *West v. Solar Mosaic LLC* (2024) 105 Cal.App.5th 985, 993.)

In the first step, "the moving party bears the burden of producing 'prima facie evidence of a written agreement to arbitrate the controversy.' " (*Gamboa v. Northeast Community Clinic* (2021) 72 Cal.App.5th 158, 165 (*Gamboa*).) The moving party satisfies this initial burden by stating verbatim the provisions of the agreement or by attaching a copy of the agreement to the motion. (*Espejo v. Southern California Permanente Medical*

---

[3] Because CMG and plaintiffs use this burden-shifting framework, we assume without deciding it applies here.

*Group* (2016) 246 Cal.App.4th 1047, 1058 (*Espejo*), citing *Condee v. Longwood Management Corp.* (2001) 88 Cal.App.4th 215, 218; see also Cal. Rules of Court, rule 3.1330.)  "For this step, 'it is not necessary to follow the normal procedures of document authentication.' " (*Gamboa*, at p. 165.)  If the arbitration agreement is not disputed, "then nothing more is required for the moving party to meet its burden of persuasion." (*Ibid*.)

But, "[i]f the moving party meets its initial prima facie burden *and* the opposing party disputes the agreement, then in the second step, the opposing party bears the burden of producing evidence to challenge the authenticity of the agreement." (*Gamboa, supra,* 72 Cal.App.5th at p. 165, italics added.) The opposing party "need not *prove* that his or her purported signature is not authentic, but must submit sufficient evidence to create a factual dispute and shift the burden back to the arbitration proponent . . . ." (*Iyere, supra,* 87 Cal.App.5th at p. 755.)

If there is a factual dispute, the court proceeds to the third step, in which "the moving party must establish with admissible evidence a valid arbitration agreement between the parties" by a preponderance of the evidence. (*Gamboa, supra,* 72 Cal.App.5th at pp. 165–166.)

When a trial court finds that the party seeking arbitration failed to carry its burden, it is " ' "almost impossible" ' " to prevail on appeal. (*Fabian v. Renovate America, Inc.* (2019) 42 Cal.App.5th 1062, 1066–1067 (*Fabian*).) This is because, on appeal, we presume the trial court found the evidence lacked sufficient weight and credibility to satisfy the burden of proof — a finding that is binding on us as the reviewing court. (*Id.* at p. 1067; *Jones v. Solgen Construction, LLC* (2024) 99 Cal.App.5th 1178, 1196 (*Jones*).) Therefore, unless the trial court made a specific finding of fact in favor of the losing party, all factual matters must be viewed in support of the judgment,

and all conflicts must be resolved in favor of the prevailing party. (*Jones*, at p. 1196.)

Accordingly, where, as here, the trial court finds the moving party failed to meet its burden of proof, " ' "the question becomes whether the appellant's evidence was (1) 'uncontradicted and unimpeached' and (2) 'of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding.' " ' " (*Fabian, supra*, 42 Cal.App.5th at p. 1067, quoting *Juen v. Alain Pinel Realtors, Inc.* (2019) 32 Cal.App.5th 972, 978–979.) To prevail under this standard, "the appellant must show that his evidence compelled a finding that he met his burden of proof *as a matter of law*." (*Jones, supra*, 99 Cal.App.5th at p. 1196, italics added.)[4]

## *B. The Trial Court did not Err by Finding that Plaintiffs Shifted the Burden to CMG to Prove Authentication*

CMG contends plaintiffs failed to raise a factual dispute as to the authenticity of the electronic signatures on the 2021 arbitration agreements. CMG asserts plaintiffs never affirmatively and unequivocally stated they did not sign the arbitration agreements, but rather each plaintiff stated: "To the best of my recollection, I did not electronically sign" the 2021 arbitration agreement.

---

[4] Without ever addressing the applicable standard of review, CMG asserts the trial court's ruling was not supported by substantial evidence. But, "it is 'misleading' to say that the review is for substantial evidence" where "the decision is based on a failure of a party to meet its burden of proof." (*Jones, supra*, 99 Cal.App.5th at p. 1196.) Regardless, as discussed herein, the court's findings are supported by substantial evidence. (See, e.g., *Bannister v. Marinidence Opco, LLC, supra*, 64 Cal.App.5th at p. 545, fn. 1.)

First, plaintiffs' challenge of the electronic signatures on the arbitration agreements raised a factual dispute. (*Ruiz v. Moss Bros. Auto Group, Inc.* (2014) 232 Cal.App.4th 836, 844 (*Ruiz*) [finding declaration that plaintiff "did not recall electronically signing the 2011 agreement" sufficient to raise a factual dispute].) Each plaintiff declared to the best of their recollection they did not sign the agreements or authorize anyone to sign on their behalf. Both plaintiffs further attested that they did not personally set up the passwords associated with their work emails. Each declared that CMG had access to their work email accounts. These statements made under the penalty of perjury were sufficient to challenge the authenticity of the agreements and shift the burden to CMG to produce evidence establishing valid agreements existed. (See *Ruiz, supra*, 232 Cal.App.4th at pp. 840–841, 846.) Under step two of the analysis, Plaintiffs bore "not the ultimate burden of *proof* but only a burden of *production* of evidence creating a dispute as to their signature's authenticity; the ultimate burden of proof remains with the arbitration proponent." (*Iyere, supra*, 87 Cal.App.5th at p. 755, fn. 7.) Here, both plaintiffs stated to the best of their knowledge they did not electronically sign the 2021 arbitration agreement. CMG suggests these statements mean that plaintiffs were professing a mere lack of recollection that they e-signed the agreements, which CMG urges does not create a dispute as to the authenticity of their signatures. Although that is one interpretation, another reasonable interpretation of their statements is that plaintiffs believed they did not electronically sign the 2021 arbitration agreement, but could not assert denials with 100% certainty because of the nature of an electronic signature (as opposed to a wet signature). As the trial court implicitly did, we conclude a fair reading of plaintiffs' declarations is that they did not sign the agreements. In addition, as the trial court explained, the April 1 email to

9

all employees did not identify which employees were included on the email, that nothing in the email itself indicated that the 2021 arbitration agreement was sent to either plaintiff, and that other people had access to plaintiffs' email accounts. On this record, CMG fails to persuade us that there was no substantial evidence for the trial court's finding that plaintiffs met their burden of production.

Second, CMG's reliance on our decision in *Iyere* is misplaced. There, an employer had moved to compel arbitration of the plaintiffs' claims based on copies of arbitration agreements bearing their *handwritten* signatures. (*Iyere*, *supra*, 87 Cal.App.5th at p. 751.) As we explained, "[a]n individual cannot confirm or deny the authenticity of an electronic signature by viewing a computer printout of the person's printed name followed by the words '(Electronic Signature).' In such a case, the individual's inability to recall signing electronically may reasonably be regarded as evidence that the person did not do so. However, an individual is capable of recognizing his or her own personal signature. If the individual does not deny that the handwritten personal signature is his or her own, that person's failure to remember signing is of little or no significance." (*Id.* at p. 757.)[5]

In reversing the order denying the employer's motion, we noted the plaintiffs did not deny having signed the agreement or claim their physical signatures were forged or inauthentic. (*Iyere*, *supra*, 87 Cal.App.5th at

---

[5] Our position as to what constitutes sufficient evidence to create a factual dispute about the authenticity of a *handwritten* signature is at odds with *Gamboa*, *supra*, 72 Cal.App.5th at pp. 164–165. (See *Ramirez v. Golden Queen Mining Co., LLC* (2024) 102 Cal.App.5th 821, 825.) As this case is limited to the authenticity of electronic signatures, we need not further address this split.

p. 756.)  Rather, the plaintiffs admitted they had signed a stack of documents at the employer's behest and the signatures on the arbitration agreements were theirs.  (*Id.* at pp. 753, 756.)  Each plaintiff further declared, " 'I do not recall ever reading or signing any document entitled Binding Arbitration Agreement . . . . I do not know how *my signature* was placed on [the document].' "  (*Id.* at p. 756, italics added.)  In light of plaintiffs' admissions that the signatures were theirs, we concluded their declarations did "not create a factual dispute" as to whether they had signed the agreement.  (*Ibid.*)  Nampeera and Prevost made no such admissions here.  Rather, each could not recall electronically signing the agreements.  These statements made under the penalty of perjury may be reasonably regarded as evidence that Nampeera and Prevost did not sign the agreements.  (See *id.* at p. 757.)

Accordingly, there was substantial evidence supporting the trial court's conclusion that plaintiffs presented sufficient evidence challenging the arbitration agreements to shift the burden back to CMG to produce evidence establishing the electronic signatures on the arbitration agreements were authentic.  (*Ruiz, supra,* 232 Cal.App.4th at p. 846; *Espejo, supra*, 246 Cal.App.4th at p. 1060.)

### *C. CMG's Evidence did not Compel a Finding of Authentication as a Matter of Law*

CMG was required to demonstrate that Nampeera and Prevost did, in fact, sign the documents electronically.  (See *Trinity v. Life Ins. Co. of North America* (2022) 78 Cal.App.5th 1111, 1124–1125; *Ruiz, supra,* 232 Cal.App.4th at p. 846.)  A proponent seeking to authenticate an electronic signature must show the electronic signature " 'was the act of the person,' " which could be shown " 'in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the

11

electronic record or electronic signature was attributable.' " (*Ruiz*, at p. 843, italics omitted; see Civ. Code, § 1633.9, subd. (a).) "For example, a party may establish that the electronic signature was 'the act of the person' by presenting evidence that a unique login and password known only to that person was required to affix the electronic signature, along with evidence detailing the procedures the person had to follow to electronically sign the document and the accompanying security precautions." (*Bannister v. Marinidence Opco, LLC*, *supra,* 64 Cal.App.5th at p. 545 (*Bannister*).) A summary assertion in a declaration that the opposing party electronically signed the arbitration agreement is insufficient; there must be facts explaining *how* the signature "came to be placed" on the agreement. (*Ruiz, supra*, 232 Cal.App.4th at pp. 843–844; see *Fabian*, *supra*, 42 Cal.App.5th at pp. 1069–1070 [declaration deemed insufficient where declarant only " 'summarily asserted' " that the opposing party " 'entered into' " the agreement and did not explain the process used to obtain and verify the electronic signature, including how the agreement was presented to the opposing party, the specific location and time the agreement was signed, and how the signature could have been placed on the agreement by only that party].)

Here, CMG failed to carry its burden because the evidence it provided—which rested entirely on Harbourne's declarations—was not so uncontradicted and unimpeached that it compelled a conclusion that CMG sustained its burden of establishing that Nampeera and Prevost placed the electronic signatures on the arbitration agreements. (See *Ruiz, supra*, 232 Cal.App.4th at p. 844.) Although Harbourne explained the DocuSign process, she did not explain how CMG employees securely accessed the DocuSign portal — i.e. how only a specific employee, as opposed to anyone else with

12

access to the employee's email, could have logged on and signed the agreement. Instead, she summarily concluded that Nampeera and Prevost electronically signed the agreements based on the confirmation information provided by DocuSign.

The trial court found that CMG's evidence did not detail the security precautions regarding the use of the DocuSign portal such that plaintiffs were the only individuals who could have accessed the 2021 agreements and signed them; there were no unique usernames and passwords or other login information. The trial court's explanation is entirely consistent with Civil Code section 1633.9 and the statement of the rule articulated above. (See *Bannister, supra*, 64 Cal.App.5th at p. 545.)

The court also took into consideration and credited plaintiffs' statements that other people had access to their email – a position seemingly unrefuted by CMG. Misconstruing its burden, CMG asserts that even if the statements were true, plaintiffs failed to present any evidence demonstrating that anyone at CMG "actually did access the email accounts." (Italics omitted.) Plaintiffs by their statements raised a question as to the authenticity of their electronic signatures. It was then up to CMG to present evidence refuting plaintiffs' claims. (See *Gamboa, supra*, 72 Cal.App.5th at pp. 165–166.) This they did not do.

Our conclusion that CMG did not meet its burden is informed by *Ruiz* and *Espejo*. In *Ruiz*, the reviewing court affirmed a trial court's ruling denying the employer's motion to compel arbitration on the ground the employer did not meet its burden of authenticating the employee's purported electronic signature on the arbitration agreement. (*Ruiz, supra*, 232 Cal.App.4th at p. 838.) The employer's initial evidence consisted of its business manager's declaration summarily asserting the employee, Ruiz, was

13

the person who electronically signed the agreement, and a copy of the agreement bearing an electronic signature in Ruiz's name with a date and time stamp for the signature. (*Id.* at p. 843.) After Ruiz averred he "did not recall" electronically signing the agreement, the business manager offered a reply declaration explaining that the arbitration agreement was part of an employee acknowledgment form the employer presented to all of its employees, and that each employee was required to log into the company's HR system, using his or her " 'unique login ID and password,' " to review and sign the acknowledgment form. (*Id.* at p. 844.) However, the business manager "did not explain how, or upon what basis, she inferred that the electronic signature on [the agreement] was 'the act of' Ruiz." (*Ibid.*) The *Ruiz* court held this omission "left a critical gap in the evidence supporting the petition" that rendered it "insufficient to support a finding that the electronic signature was, in fact, 'the act of' Ruiz." (*Ibid.*)

A year after *Ruiz*, the reviewing court in *Espejo* reversed a trial court's order denying an employer's petition to compel arbitration. (*Espejo, supra,* 246 Cal.App.4th at pp. 1050–1051.) In *Espejo*, to authenticate an electronic signature, the defendant submitted a declaration from its systems consultant who detailed the company's "security precautions regarding transmission and use of an applicant's unique username and password." (*Id.* at p. 1062.) Specifically, the systems consultant stated that the agreement was emailed to the applicant, that access to the agreement required a username and password that was only "provided by phone 'directly and orally to the applicant,' " and that to proceed the applicant was required to immediately reset the password. (*Id.* at p. 1053.) The *Espejo* court concluded that these details were sufficient to establish that the electronic signature was "the act of" the plaintiff (Civ. Code, § 1633.9, subd. (a)) even if Espejo "did not 'recall

14

seeing or accessing' " the arbitration agreement. (*Espejo, supra,* at pp. 1054, 1062.)

As explained above, when an appeal turns on the appellant's failure of proof, a reviewing court can reverse only if the record shows " 'the appellant's evidence was (1) "uncontradicted and unimpeached" *and* (2) "of such a character and weight as to leave no room for a judicial determination that it was insufficient to support a finding." ' " (*Sonic Manufacturing Technologies, Inc. v. AAE Systems, Inc.* (2011) 196 Cal.App.4th 456, 466, italics added.) *Espejo* presented such a record. Here, by contrast, CMG provided a generic email—purportedly sent to "all employees"—indicating that an arbitration agreement would be sent "[i]n the coming days." Harbourne could only attest upon "inform[ation] and belie[f]" that plaintiffs received the arbitration agreements by DocuSign. She further surmised it was "reasonable to conclude" plaintiffs electronically signed the agreements based on "a unique Envelope ID" generated by DocuSign. However, Harbourne did not explain how CMG employees accessed DocuSign documents, and what, if any, security measures CMG utilized to ensure the electronic signatures were the acts of its employees. As in *Ruiz*, there was a "critical gap" in the evidence supporting the petition that rendered it "insufficient to support a finding" that the electronic signatures were, in fact, the acts of Nampeera and Prevost. (*Ruiz, supra,* 232 Cal.App.4th at p. 844.) Nampeera and Prevost effectively denied signing an arbitration agreement and each affirmatively denied they authorized anyone at CMG to sign on their behalf. While the phrasing of plaintiffs' denials is subject to alternative interpretations, we defer to the trial court's implicit finding that plaintiffs' declarations were persuasive evidence that plaintiffs did not sign the agreements and that CMG's evidence to the contrary lacked sufficient weight and credibility to

15

satisfy the burden of proof. (*Fabian*, supra, 42 Cal.App.4th at p. 1067; *Jones*, supra, 99 Cal.App.5th at p. 1196.) And there is additional countervailing evidence someone at CMG could have electronically signed the agreements. Both plaintiffs averred that their emails and passwords were created by CMG and neither plaintiff ever set up her own password.

In sum, CMG's evidence was neither uncontradicted nor " ' " 'of such a character and weight as to leave no room for a judicial determination' " ' " that it was insufficient to meet their burden. (*Fabian, supra,* 42 Cal.App.5th at pp. 1067, 1070.) The trial court was not compelled to find the electronic signatures authentic.

### D. CMG May Not Rely on the 2019 and 2020 Agreements

Finally, CMG argues that even if plaintiffs did not electronically sign the 2021 agreement, they signed other agreements in 2019 (Prevost) and 2020 (Nampeera), and the motion should have been granted on those prior agreements. We disagree. CMG did not seek to compel arbitration based on the 2019 and 2020 arbitration agreements, and did not mention either agreement until it filed its reply papers. And, even then CMG did not seek to compel arbitration based on the prior agreements. Rather, CMG referenced the prior agreements to show how plaintiffs purportedly signed "multiple DocuSign[] arbitration agreements throughout their respective employment with CMG." It wasn't until the hearing on its motion that CMG asserted the prior agreements were an independent basis to compel arbitration of plaintiffs' claims. Such tardiness amounts to a forfeiture or waiver. (See *Gallo v. Wood Ranch USA, Inc.* (2022) 81 Cal.App.5th 621, 646 [raising issue for first time at hearing forfeited or waived], disapproved on another point in *Hohenshelt v. Superior Court* (2025) 18 Cal.5th 310, 349; *Rancho Pauma Mutual Water Co. v. Yuima Municipal Water Dist.* (2015) 239 Cal.App.4th

16

109, 118–119 [alluding to argument for first time during hearing in the trial court did not preserve issue for appeal]; *Acosta v. Los Angeles Unified School Dist.* (1995) 31 Cal.App.4th 471, 480 [argument raised for first time at hearing on motion; waived].)  Thus, the argument that the 2019 and 2020 agreements were an independent basis to compel arbitration of plaintiffs' claims was not properly presented to the trial court and is not properly before this court.  (*Ruiz, supra,* 232 Cal.App.4th at p. 846.)

## III.

## DISPOSITION

The order denying CMG's motion to compel arbitration is affirmed. Plaintiffs shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

17

_____
Sweet, J.*

WE CONCUR:


_____
Brown, P. J.


_____
Goldman, J.

---

* Judge of the Superior Court of California, County of Marin, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.